United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2005**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

---

m 04-70026

---

CHARLES DANIEL THACKER,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before SMITH, DEMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Charles Thacker seeks a certificate of appealability ("COA") from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because Thacker cannot make a substantial showing of the denial of a federal constitutional right, we deny a COA.

I.

A state jury found Thacker guilty of capital murder and further answered Texas's special issues in a manner that required imposition of a death sentence. As summarized by the Texas

Court of Criminal Appeals on direct review, the facts are as follows:

On the evening of April 7, 1993, during a telephone conversation with a friend, Karen Crawford said that she was going to go to the store for dog food. That same evening, a resident of her apartment complex informed the maintenance supervisor, Arkan Hall, that Crawford's keys were hanging from her mailbox, which was located in a common area near the apartment offices. Hall went to Crawford's apartment, but she did not answer the door. He then noticed her car, with her dog inside, parked near the mail room. While checking the area of the mail room and pool, Hall found the women's restroom locked. He beat on the door, and a man's voice answered from the inside. The man became quiet when Hall asked why he was using the women's restroom.

Hall attempted unsuccessfully to force open the door of the restroom. He then telephoned the apartment manager, Emily Vaughn. She and her husband Terrence Cowie arrived at the scene, and the three discussed what to do. Suddenly, the restroom door opened and [Thacker] emerged. A fight ensued when Hall attempted to stop him. Hall attempted to cut [Thacker] with his pocket knife, but [Thacker] sprayed him with mace and got away. [Thacker] sprayed Cowie as well, and then pushed his way through one of the two exit gates. Hall and others nearby chased [Thacker] down the block and tried to cut off his escape.

In the meantime, Vaughn found Crawford lying face down on the restroom floor. She was unconscious. One shoe and one leg of her jogging pants were pulled off; the other pants leg was pulled down to her ankle. Hall and another man administered CPR. They detected a heart beat, but she was not breathing. Some faint brain activity was detected when she arrived at the hospital, but it ceased within twenty-four hours.

Medical examiners concluded that Crawford's death was the result of strangulation. Crawford's neck was bruised on the front and left side and her face and eyes exhibited a condition known as pinpoint hemorrhaging. It was determined that a choke hold or "hammerlock" was the probable method of strangulation. No evidence of a completed sexual assault was found.

In the early morning hours of April 8, 1993, a police canine unit found [Thacker] hiding in a yard near Crawford's apartment complex. A truck containing papers bearing [Thacker's] name was found parked outside the offices of Crawford's apartment complex. [Thacker] was identified by several witnesses who saw him loitering about the mail room just before the offense. He was also identified by witnesses who saw him running where Crawford was found. A pubic hair matching a sample from Crawford was found in [Thacker's] underwear.

*Thacker v. State*, No. 71,891, at 2-3 (Sept. 18, 1996).

Thacker appealed, raising fifty-seven points of error. His conviction was affirmed on direct review, so he sought state collateral review, raising eight points of error, but was again denied relief. This denial was affirmed in an unpublished opinion by the Court of Criminal Appeals. *Ex parte Thacker*, No. 74,034

2

(Tex. Crim. App. Dec. 19, 2001) (unpublished), *cert. denied*, 537 U.S. 829 (2002).

Thacker filed his initial federal habeas petition, which the district court dismissed, without prejudice, to allow for complete state court exhaustion of his claim under *Ring v. Arizona*, 536 U.S. 584 (2002), which held that juries must make determinations regarding aggravating and mitigating factors. After his second state habeas petition was dismissed, *Ex parte Thacker*, No. 48,092-02 (Tex. Crim. App. Dec. 10, 2003) (unpublished), Thacker renewed his federal habeas petition, raising nine grounds for relief. The district court denied relief and denied a COA. *Thacker v. Dretke*, No. H-04-CV-126 (S.D. Tex. May 27, 2004).

## II.

Our review on a request for COA is highly circumscribed by statute. Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), to be entitled to relief a petitioner must show that the state court resolution of his case was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1] This high level of deference to state court proceedings "embodies the principles of federalism, comity, and finality of judgments . . . ." *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002).

To grant a COA, however, we need not decide the ultimate merits of the underlying habeas petition; we ask only whether the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253-(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). That is, our duty is to determine not whether Thacker is entitled to relief, but whether the district court's conclusion (that the state court adjudication was not contrary to or an unreasonable application of federal law) is one about which jurists of reason could disagree.[2]

## III.

In his COA application, Thacker raises seven issues related to only two alleged errors: that (1) the instruction given the jury on his capital murder charge was a misstatement of Texas law, or at the very least was substantially confusing to the jury as to the sufficient level of intent required to convict; and (2) the trial court's disallowance of any reference to Thacker's parole eligibility in the presence of the jury was unconstitutional. Thacker argues that the erroneous jury charge violated his due process rights under the Fourteenth Amendment and the Trial by Impartial Jury Clause of the Sixth Amendment, and that he was de-

---

[1] *See also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

[2] As the district court correctly noted and we will discuss further, *infra*, "Other doctrines, such as the harmless-error doctrine and the non-retroactivity principle, bridle federal habeas relief." *Thacker*, No. H-04-126, slip op. at 8.

prived of his Sixth Amendment right to effective assistance of counsel. With respect to the parole eligibility question, Thacker avers that the purported error violates the Due Process Clause of the Fourteenth Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, and the Compulsory Process Clause of the Sixth Amendment.

### A.

Texas law mandates that the court provide the jury with a written charge that describes the applicable law. *See* TEX. CODE CRIM. PROC. ANN. art. 3614. This statute has been interpreted as requiring "the judge to provide the jury with both an abstract statement of the law and an application of that abstract statement to the evidence in the case." *Riley v. State*, 830 S.W.2d 584, 586-87 (Tex. Crim. App. 1992). The court instructed the jury, in the abstract portion, as follows:

> A person commits the offense of murder if he intentionally causes the death of an individual or if he intends to cause serious bodily injury and intentionally commits an act clearly dangerous to human life that causes the death of an individual.

> A person commits capital murder if he intentionally commits murder, as heretofore defined, and the person intentionally commits murder in the course of committing or attempting to commit aggravated sexual assault.

These instructions, when read in harmony, attempt to explain the uncontroversial principle that, under Texas law, one may not be convicted of capital murder without a finding that death was specifically intended. Murder, on the other hand, can be committed without that specific intent where an act obviously danger-ous to human life causes death. Nevertheless, Thacker contends that the phrase "murder, as heretofore defined" confused the jury as to whether a specific intent was required to find him guilty of capital murder.[3]

Thacker's concern is not unfounded. In the midst of deliberations, the jury foreman sent a note to the court, querying,

> On page 3, the charge says, "Now, if you find . . . intentionally cause the death of . . . ." Does that mean that the defendant had to have the intent to cause her death to be convicted of capital murder? Or as on page 1, ". . . if he intends to cause serious bodily injury and intentionally commits an act clearly dangerous to human life . . ." sufficient to convict the defendant of capital murder in conjunction with the attempt to commit aggravated sexual assault.

In response, the court directed the jury "[p]lease refer to the charge and continue deliberating." The jury continued deliberating

---

[3] The question of intent was significant at Thacker's trial. On review of his state habeas petition, the Court of Criminal Appeals noted,

> At trial the State acknowledged that the element of intent was the weakest part of its case. During a hearing outside the presence of the jury, the prosecutor stated, " . . . The State does not have evidence on the issue of [Thacker's] intent to kill . . . ." Therefore, the prosecutor offered evidence that a few weeks before [the death of Crawford, Thacker] had committed another sexual assault [which involved an attempted choking].

*Thacker*, No. 74,034 at 2-3. The trial court admitted this evidence as probative of motive and intent. *See id.* at 3.

for fifteen minutes before returning a guilty verdict on the charge of capital murder.

On review of Thacker's first petition for state habeas relief, the Court of Criminal Appeals held that the instructions did not contain "any error at all," *Ex parte Thacker*, No. 74,034, at 9; that any confusion was mitigated by the correct statement of law in the application paragraph of the charge;[4] and that the court's note to the jury to refer back to the charge therefore remedied any confusion.

### B.

Thacker contends that the state court's rejection of his claim of jury-instruction error was violative of his federal constitutional rights, *to-wit*, the Trial and Impartial Jury clause of the Sixth Amendment and the Due Process clause of the Fourteenth Amendment. Due process requires that conviction for a criminal offense must be supported by a finding, beyond reasonable doubt, that all elements of the crime are present. *In re Winship*, 397 U.S. 358, 364 (1970). Similarly, in a jury trial the Sixth Amendment requires the same care.[5] Consequently, if a jury instruction were to permit conviction under circumstances that lightened this heavy constitutional burden on the prosecution, it is possible that, if the error were sufficiently central to the entire trial,[6] the conviction would violate the Constitution.

The district court held that these claims are procedurally foreclosed. We agree, and, because this conclusion is not one about which reasonable jurists can differ, we decline to issue a COA.

"Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the state based its rejection of that claim on an adequate and independent state ground. *Martin v. Maxey*, 98 F.3d 844, 846 (5th Cir. 1996).[7] In no uncertain terms, the Court of Criminal Appeals rejected Thacker's claim with respect to the jury instruction because Thacker had "failed to object to the jury charge definition of murder and/or capital murder at trial [and t]hus, he has failed to preserve this issue for consideration in a post-conviction writ of habeas corpus." *Thacker*, No. 74,034, at 7.

In federal district court, Thacker contended that the Court of Criminal Appeals' alternative holdingSSthat the jury instruction was not error even if not procedurally-barredSSdemonstrates that the true basis of the rejection of his

---

[4] Thacker concedes that there was no error in the application paragraphs. Significantly, it is the application paragraph that authorizes conviction under Texas law; the abstract paragraph merely state a theory of law. *See McFarland v. State*, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996).

[5] *See United States v. Hebert* 131 F.3d 514, 521-22 (5th Cir. 1997) (stating that the Sixth Amendment requires that a jury find a defendant guilty of all elements of a crime to convict).

[6] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" (citation omitted)).

[7] This doctrine has an exception where the petitioner can demonstrate the cause of his procedural default and show actual prejudice as a result of the alleged violation of federal law, or that failing to consider his claim will yield a fundamental "miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Thacker makes no such argument.

5

claims was substantive, not procedural. The district court properly rejected that argument.[8] Further, Thacker completely ignores this hurdle in his brief in support of his application for COA, so the issue is waived.[9]

### C.

The procedural bar, however, does not end our review of the complained-of instruction. Thacker argues strenuously that the failure of trial counsel to object to the charge, or to request an additional instruction after the jury's note was received, constituted ineffective assistance of counsel, contrary to the dictates of the Sixth Amendment. To review the ineffective assistance claim, we must analyze the alleged error regarding the jury instruction. Nevertheless, under the Supreme Court's Sixth Amendment jurisprudence,[10] Thacker must demonstrate not just that the alleged jury instruction was in error, and not just that his lawyer's failure to object to it was in error, but that such a failure was so serious as to "fall[] below an objective standard of reasonableness and thereby prejudice[] the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Further, AEDPA, as discussed above, requires that Thacker show that the state court resolution of this Sixth Amendment claim was "not only erroneous, but objectively unreasonable." *Id.* The district court held that the Court of Criminal Appeals was objectively reasonable in finding that Thacker's trial attorney's conduct was not so egregious as to fall below an objectively reasonable standard of professional performance. Therefore, for us to issue a COA on the issue of ineffective assistance, we must find that jurists of reason could disagree as to whether the district court erred in reaching such a conclusion.

Thacker's court-appointed appellate counsel tries to surmount this obviously high hurdle with admirable skill. In attempting to demonstrate that the jury instructions were, at best, confusing, and at worst, downright erroneous, Thacker contends that the instructions violated the Sixth and Fourteenth Amendments by allowing the jury to convict on the charge of capital murder without finding the requisite element of specific intent. A cursory reading of the abstract paragraphs, excerpted above, might lend support to that claim. The reference in the second abstract paragraph to "murder, as heretofore defined" could easily be read, especially by lay jurors, as allowing for conviction of capital murder without the requisite specific intent. The jury communicated its confusion via its note to the court.

Nevertheless, as Thacker concedes, it is a "well established proposition that a single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). In that vein, the Court of Criminal Appeals emphasized that the application paragraphs (which Thacker concedes were accurate) "explicitly stated, not once, not twice, but three times that before the jury could convict [Thacker] of capital murder, it must find, beyond a reasonable doubt, that [Thacker] 'intentionally caused the death of Karen Gail Crawford,' 'specifically intended to

---

[8] *See Thacker,* No. H-04-126 at 12 (quoting *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998) ("[A]lternative rulings do not operate to vitiate the validity of a procedural bar that constitutes the primary holding.")).

[9] *See, e.g., United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

[10] *See, e.g., Strickland v. Washington*, 466 U.S. 668, 686 (1984).

6

cause the death of said Karen Gail Crawford,' and 'intentionally cause[d] the death of Karen Gail Crawford.'" *Thacker*, No. 74,034, at 10-11.

Those three instances, coupled with the abstract portion of the jury charge, which the state court found to state the law correctly, rendered a total of five times that the jury was instructed that specific intent was required to convict of capital murder. Additionally, in its closing argument, even the prosecution specifically reminded the jury that intent to kill was required to convict on capital murder. *Thacker*, No. 74,034, at 4.

Even if we were convinced that the state court's conclusionSSthat the abstract portion was without flawSSis incorrect, that is a far cry from reaching the level of error needed to warrant relief at this stage. The Court of Criminal Appeals reasonably concluded that the jury charge, taken as a whole, did not violate Thacker's constitutional rights. Though this conclusion might be arguable, it certainly does not qualify as such an unreasonable application of settled Supreme Court precedent as to warrant relief under AEDPA. *See* 28 U.S.C. § 2254(d). Given that the state court was not unreasonable in finding the jury charge sufficient, it would be logically impossible for us to hold that Thacker's trial counsel's failures to object to the charge fell below an objectively reasonable standard of professional conduct.

In sum, although reasonable minds might differ as to whether the jury charge was erroneous or confusing, reasonable jurists cannot differ as to whether the Court of Criminal Appeals conclusively adjudicated those claims in such a manner as not to be an unreasonable application of federal law. Under the strict limitations of AEDPA, therefore, we cannot issue Thacker a COA on his claim that the jury instruction violated his constitutional rights.

IV.

A.

Thacker's other claims relate to the lack of discussion at trial of his potential eligibility for parole if not sentenced to death. At trial, the court forbade any reference to the potential for parole eligibility that is possible for prisoners serving life sentences for capital murder in Texas.[11] Although Texas subsequently has allowed for jury instructions regarding parole eligibility in capital murder cases,[12] this was not the case at the time of Thacker's trial. Instead, the jury was forced to consider, at the sentencing phase, the issue of Thacker's future dangerousness without hearing any testimony or argument regarding the possibility or likelihood of his release on parole if given a life sentence.

Thacker contends that his inability to raise this issue violates his constitutional rights (1) to due process of law under the Fourteenth Amendment; (2) to be free from cruel and unusual punishment as protected by the Eighth Amendment; and (3) to exercise compulsory process to present a complete defense by virtue of the Sixth Amendment. On state habeas review, Thacker's claims regarding parole

---

[11] Specifically, while Texas does not allow for life imprisonment without the possibility of parole, if spared the death penalty, Thacker would have been ineligible for parole until he served thirty-five years in prison.

[12] *See* TEX. CODE CRIM PROC. art. 37.071, § 2(e)(2)(B).

eligibility were summarily rejected.[13]

The district court rebuffed Thacker's argument that this rejection was contrary to, or an unreasonable application of, federal law. Relying on our numerous precedents holding that Texas does not violate due process or the prohibition against cruel and unusual punishment by not informing juries of parole eligibility, the court found that Thacker had failed to demonstrate that the state court's rejection of these arguments amounted to a violation of federal law.

Alternatively, the district court ruled that the non-retroactivity principle of *Teague v. Lane*, 489 U.S. 288 (1989), would preclude relief for Thacker even if his arguments regarding due process and the Eighth Amendment were convincing. That is, were Thacker to convince the court that settled Supreme Court precedent yielded the Texas court's rejection of these claims unreasonable, he is still not entitled to relief on federal collateral review under *Teague.*

With respect to Thacker's novel assertion that the Sixth Amendment requires that he be allowed to present evidence on parole eligibility to the jury, the state court, as we have said, summarily rejected that claim. The federal district court held both that this was not contrary to federal law and that *Teague* would bar relief under this theory. *Thacker*, No. H-04-CV-126, at 42.

B.

In *Simmons v. South Carolina*, 512 U.S. 154, 169 (1994), the Court concluded that the possibility of a life sentence without possibility of parole is relevant to a jury's determination of whether the defendant poses future harm to society. Indeed, such a sentencing scheme "necessarily undercut[s] the state's argument regarding the threat the defendant poses to society." *Id.* Nevertheless, under regimes that allow for parole eligibility, the decision whether to instruct the jury on that fact is reserved to the states, and the Court "shall not lightly second-guess" the decision. *Id.* at 168.

Since *Simmons* was decided, we have repeatedly held that neither the Due Process clause nor the Eighth Amendment requires Texas to allow presentation of parole eligibility issues, because Texas does not offer, as an alternative to capital punishment, life imprisonment without possibility of parole.[14] Undeterred by this ample caselaw to the contrary, Thacker urges that Supreme Court precedent subsequent to *Simmons* (and even *Simmons* itself) extends to invalidate the sort of state regime employed in Texas.

In the noticeable absence of any settled federal law supporting Thacker's notion, AEDPA precludes the federal courts from granting habeas relief. That is, it cannot be said that the state court's application of federal law was objectively unreasonable. The "threshold inquiry [under AEDPA] does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Instead, our task is only to

---

[13] *Ex parte Thacker*, No. 661,866-A, at 16-17 (338th Dist. Ct., Harris County, Tex., July 11, 2000), *aff'd*, *Thacker,* No. 74,034, at 16 (summarily rejecting parole eligibility claims).

[14] *See*, *e.g., Elizade v. Dretke*, 362 F.3d 323, 332-33 (5th Cir.), *cert. denied*, 125 S. Ct. 293 (2004); *Woods v. Cockrell*, 307 F.3d 353, 360-62 (5th Cir. 2002); *Johnson v. Cockrell*, 306 F.3d 249, 256-57 (5th Cir. 2002).

determine whether the district court's disposition was "debatable among jurists of reason." *Id.* at 330.

Thus, settled precedent makes pellucid the reasonableness of the state court's rejection of Thacker's argument that *Simmons* and its progeny require that he be able to raise parole eligibility with the jury. The district court's denial of his claims, therefore, is not reasonably debatable and cannot justify the issuance of a COA.[15]

## C.

Thacker makes the creative claim that the Sixth Amendment's Compulsory Process Clause guarantees him the right to present testimony and argument relating to parole eligibility. This argument rests principally on *United States v. Scheffer*, 523 U.S. 303 (1998), in which the Court considered the argument that the Sixth Amendment requires courts to allow a defendant to present allegedly exculpatory polygraph evidence. Rejecting that theory, the Court explained that "[a]

defendant's right to present relevant evidence is not unlimited, but is subject to reasonable restrictions." *Id.* at 308. The Court went on to announce a framework for evaluating the reasonableness of such restrictions. For exclusionary evidentiary rules to pass constitutional muster, they must not be "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)).

Thacker posits that prohibiting discussion regarding parole eligibility unconstitutionally burdened his right to present mitigating evidence in that the restriction is disproportionate to the purposes it is designed to serve. Because this is a novel approach, Thacker faces the same non-retroactivity hurdle that he must overcome with respect to his due process and Eighth Amendment claims. As we have said, *Teague* prevents federal courts from granting habeas relief predicated on a "new" rule of constitutional law.

Thacker attempts to get around this barrier by arguing that if we conclude that the Sixth Amendment was violated, it will merely be an "unremarkable" application of *Scheffer* to new facts. Thacker analogizes his Sixth Amendment claim to the application of *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court laid out a framework for evaluating ineffective assistance claims. Specifically, in *Wright v. West*, 505 U.S. 277 (1992), Justice Kennedy explained that where a rule "is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule . . . ." *Id.* at 308-09 (Kennedy, J., concurring).

Obviously, the application of the *Washing-*

---

[15] Even if we were to agree that the *Simmons* line of cases rendered support for Thacker's claims, the non-retroactivity principle of *Teague* would preclude relief. In *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001), considering the identical parole eligibility issue, we stated, "Under *Teague*, a federal court may not create new constitutional rules of criminal procedure on habeas review." Although Thacker argues at length that applying *Simmons* in the way he proposes would merely be an unremarkable application of existing precedent, this is plainly not the case. Given the volume of caselaw in this circuit holding that, despite *Simmons*, the Fourteenth and Eighth Amendments do not require *Texas* to allow discussion of parole eligibility in capital trials, a decision to the contrary here would undoubtedly constitute a "new rule" under *Teague* and is therefore barred.

9

*ton* rule[16] is one that, by its very nature, requires a case-by-case examination of the evidence. *Scheffer*, on the other hand, merely holds that the exclusion of polygraph results is not disproportionate or arbitrary in light of a defendant's not unbridled right to present evidence in his defense. To hold that it extends to, and invalidates, all restrictions on discussion of parole eligibility would undoubtedly be a bold new step, not an "unremarkable" application of settled precedent. Thacker's Sixth Amendment argument, therefore, is so plainly barred by *Teague* that we cannot conceive that reasonable jurists would disagree.[17]

### D.

Even if Thacker's claim based on the Compulsory Process Clause claim were not barred by the non-retroactivity principle of *Teague*, its substance is insufficient for the issuance of a COA. Analysis of claims under the Sixth Amendment are routinely addressed by analysis similar to that employed in due process challenges.

> Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although *we conclude that compulsory process provides no greater protections in this area than those afforded by due pro-*

---

[16] We discuss the contours of *Washington* in part III.C., *supra*.

[17] *See Aldrich v. Dretke*, 83 Fed. Appx. 11 (5th Cir. 2003) (unpublished) (rejecting a similar Sixth Amendment claim as barred by *Teague*), *cert. denied*, 124 S. Ct. 2817 (2004).

> *cess*, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment.

*Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (emphasis added except for the word "greater"). Thus, although the two methods of analysis are not equivalent, reference to our jurisprudence considering similar claims under the Due Process clause is illuminating and persuasive.

In *Green v. Johnson*, 160 F.3d 1029, 1044 (5th Cir. 1998), we held that "a state may rationally conclude that its capital sentencing scheme would be better served by not requiring that courts inform juries of parole considerations . . . . The Texas Legislature could rationally conclude that injection of parole issues at the punishment phases of capital murder trial would invite consideration of factors unrelated to the defendant's blameworthiness . . . ." Such restrictions, therefore, do not run afoul of the Fourteenth Amendment.

Given that conclusion, it can hardly be said that the Texas Court of Criminal Appeals acted contrary to, or engaged in an unreasonable application of, federal law. Where no court has yet to publish an opinion considering Thacker's claim that the Sixth Amendment, per *Scheffer*, protects his right to discuss parole eligibility, *and* we have explicitly rejected such an argument under the analogous due process framework, we cannot say that Thacker has made a substantial showing that the Texas courts deprived him of a federal rightSSnor can we imagine that reasonable jurists could disagree.

The request for a COA is DENIED.