United States Court of Appeals
Fifth Circuit

**F I L E D**

May 30, 2006

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals

for the Fifth Circuit

_____

№ 05-70031

_____

JAMES LEWIS JACKSON,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before DAVIS, SMITH, and DENNIS,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

James Jackson seeks a certificate of appealability ("COA") from the denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because he cannot make a substantial showing of the denial of a federal constitutional right, we deny a COA.

I.

The evidence presented at trial established that Jackson murdered his wife and her two daughters because his wife intended to divorce him. Jackson confessed to strangling each victim. The jury found him guilty of capital murder for murdering more than one person during the same criminal transaction. He was

sentenced to death.

During the sentencing phase, Jackson filed a "Motion To Introduce the Testimony of Defendant's Family and Friends Regarding Their Feelings on the Prospect of a Death Sentence and the Impact an Execution Would Have on Them." The motion asked the court to allow Jackson to question his friends and family on (1) whether they wanted him to die and (2) what the impact on them would be if he were executed. The trial court denied the motion.

The conviction was affirmed on direct appeal. *Jackson v. State*, 33 S.W.3d 828 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1068 (2001). Jackson filed a state petition for writ of habeas corpus. The trial court entered findings and conclusions recommending that relief be denied; the Court of Criminal Appeals adopted those findings and conclusions. *Ex parte Jackson*, No. 52,904-01 (Tex. Crim. App. Sept. 11, 2002).

Jackson filed a federal habeas petition alleging, *inter alia*, that the refusal to allow the "execution impact" testimony violated his Eighth and Fourteenth Amendment right to present any evidence that might lead a juror to conclude that a sentence less than death was warranted. The district court granted summary judgment for the state on that claim, holding that the refusal to allow execution impact testimony was not an unreasonable application of Supreme Court precedent. The district court rejected Jackson's other constitutional claims and declined to issue a COA.

On appeal, Jackson abandons all claims except for his challenge to the exclusion of execution impact testimony. He seeks a COA from this court based on that claim.

II.

Our review on a request for a COA is constrained by statute. Absent a COA, we have no jurisdiction to entertain the merits of Jackson's claims on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must show that the state courts' resolution of his case was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1] To grant a COA, we need not decide the ultimate merits of the underlying issue in the petitioner's favor, but rather we ask only whether he has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Our role is to determine not whether Jackson is entitled to relief, but whether the district court's conclusion that the state court adjudication was not contrary to or an unreasonable application of clearly established federal law is one about which jurists of reason could disagree or as to which jurists could conclude that the issues presented are

---

[1] *See also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.").

adequate to deserve encouragement to proceed further.[2]

### III.
### A.

In *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion), the Court announced that the "Eighth Amendment and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." This rule has been applied by the Supreme Court in a number of cases.[3] "[A] defendant has wide latitude to raise as a mitigating factor 'any aspect of [his or her] character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'"[4]

To obtain habeas relief, Jackson must satisfy the standards of AEDPA. We have most recently described the means by which a petitioner in Jackson's circumstance may proceed:

> The Supreme Court has determined that section 2254(d)(1) affords a petitioner two avenues, "contrary to" and "unreasonable application," to attack a state court application of law. Under the first clause:

>> a state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court" if (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a re-

---

[2] *See Thacker v. Dretke*, 396 F.3d 607, 612 (5th Cir.), *cert. denied*, 126 S. Ct. 80 (2005); *see generally Pippin v. Dretke*, 434 F.3d 782 (5th Cir. 2005). Because the issue before us was not presented in Jackson's state habeas petition, the appropriate state court decision for review is the Texas Court of Criminal Appeals' decision on direct review. *See Bledsue v. Johnson*, 188 F.3d 250, 255 n.8 (5th Cir. 1999) ("[A]t no time have we suggested that pursuing relief in the Court of Criminal Appeals in both a petition for discretionary review and in an application for a writ of habeas corpus is necessary to satisfy the exhaustion requirement . . . . Only one avenue of postconviction relief need be exhausted."); *see also Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990); RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 23.3(b) (4th ed. 2001) ("Generally, a petitioner satisfies the exhaustion requirement if she properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state.").

The Court of Criminal Appeals held that it was not an abuse of discretion for the trial court to deny Jackson's request to introduce testimony about the emotional impact his execution would have on his family and friends. *See Jackson v. State*, 33 S.W.3d 828, 834 (Tex. Crim. App. 2000). That court relied on *Fuller v. State*, 827 S.W.2d 919, 935-36 (Tex. Crim. App. 1992), which affirmed the denial of a similar request on the ground that the evidence did not pertain to the appellant's background, character, record, or the circumstances of the offense.

[3] *See Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Skipper v. South Carolina*, 476 U.S. 1 (1986); *McKoy v. North Carolina*, 494 U.S. 433 (1990); *Tennard v. Dretke*, 542 U.S. 274 (2004).

[4] *Roper v. Simmons*, 543 U.S. 551, 568 (2005) (ellipses and second brackets in original) (quoting *Lockett*, 438 U.S. at 604 (plurality opinion)).

sult different from [Supreme Court] precedent."

Under the second clause, "a state court decision is 'an unreasonable application of clearly established' Supreme Court precedent if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" The Supreme Court provided further guidance:

> First, the Court indicated that the inquiry into unreasonableness is an objective one. Second, the Court emphasized that "unreasonable" does not mean merely "incorrect": an application of clearly established Supreme Court precedent must be incorrect and unreasonable to warrant federal habeas relief.

Only if a state court's application of federal constitutional law fits within this paradigm may this court grant relief.

*Summers v. Dretke*, 431 F.3d 861, 868-69 (5th Cir. 2005) (citations omitted).

### B.

We now examine whether Jackson has made an adequate showing for a COA under either of the "two avenues" this court has described. We conclude that he has not.

### 1.

The state court's decision does not plainly contradict Supreme Court governing law. As the federal district court in this case carefully explained,

> [Various Supreme Court] cases have consistently held . . . that the scope of constitutionally protected mitigating evidence is ev-

idence reflecting on the defendant's background or character, or on the circumstances surrounding the crime . . . . Jackson cites no case holding that evidence unrelated to his character or background or the circumstances of the crime falls within the scope of *Lockett* [*v. Ohio*, 438 U.S. 586 (1978),] and its progeny . . . .

Because the Supreme Court has never included friend/family impact testimony among the categories of mitigating evidence that must be admitted, the district court was correct in deciding that Jackson failed via the first avenue.

### 2.

The state court decision is not unreasonable under the second possible avenue for a habeas petitioner under AEDPA. If we consider that *Lockett* and its progeny announce the governing Supreme Court rule, so that the question of the admissibility of the friends/family impact evidence requires application of this existing rule to the facts, we agree that the state court's determination is not unreasonable—that is, the determination that Jackson's evidence has no mitigating value and therefore does not meet even the low relevance threshold.

Evidence of impact on friends and family does not reflect on Jackson's background or character or the circumstances of his crime, so Jackson's proffer of that evidence does not satisfy the second avenue available to him to obtain habeas relief. As the district court put it,

> The testimony Jackson wished to present . . . is not relevant either to the degree of harm Jackson's crime caused or to Jackson's moral culpability for the crime. Accordingly, this evidence does not fall within the scope of *Payne* [*v. Tennessee*, 501 U.S.

4

808 (1991),] or *Lockett*. At a minimum, the Texas courts' conclusion that Jackson was not entitled to present this evidence is not an unreasonable application of Supreme Court precedent . . . .

This reasoning also is consistent with our rejection, in *Summers*, 431 F.3d at 882-83, of the notion that "any mitigating evidence" must be allowed to be presented.

IV.

In sum, it was not objectively unreasonable for the state court to decide that extant Supreme Court holdings should not be extrapolated to include testimony as to the impact of a death sentence on family and friends. It follows that the district court's determination that the state court ruling was not unreasonable is not debatable by jurists of reason, and jurists could not conclude that the issues presented are adequate to deserve encouragement to proceed further, because there is no indication that a more plenary inquiry reasonably could yield a contrary result.

The application for COA, accordingly, is DENIED.

DENNIS, Circuit Judge, dissenting:

Because I disagree with the majority's application of <u>Miller-El</u> to the standard of review in this case, and because I disagree with the district court's conclusion that the state court did not violate clearly established federal law in excluding execution impact evidence and believe the issues presented are adequate to deserve encouragement to proceed further, I respectfully dissent.

Initially, I note that the majority, while correctly stating the standard of review from <u>Miller-El v. Cockrell</u>, has partially ignored the mandate of the Supreme Court in applying this standard. 537 U.S. 322, 327 (2003). The majority correctly notes that under <u>Miller-El</u>, we must ask whether "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id</u>. at 327. The majority opinion concludes that the issues do not deserve encouragement to proceed further because there is no indication that a full inquiry would result in the petitioner succeeding on his claims. However, to short-circuit the inquiry in this way is precisely what <u>Miller-El</u> forbids. It is not required of the defendant to prove that "some jurists would grant the petition for habeas corpus." <u>Id</u>. at 338. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." <u>Id</u>. The majority interprets <u>Miller-El</u> as a fairly restrictive standard of review

when it was intended to be applied as an unrestrictive one. In fact, the language of Miller-El suggests this lack of restriction by stating that the habeas petitioner faces only a "threshold" inquiry and "need only" demonstrate a substantial showing of the denial of a constitutional right. Id. at 327. This is especially important in death penalty cases, which have a uniquely severe penalty. Pippin v. Dretke, 434 F.3d 782, 786-87 (5th Cir. 2005)(recognizing the limited restrictions of Miller-El and holding that in the Fifth Circuit "any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner"); Clark v. Collins, 956 F.2d 68, 71 (5th Cir. 1992) (noting that the severity of a death penalty sentence is a proper consideration in weighing whether to grant a COA).

As to the substance of this request for a COA, I believe that the issues presented are adequate to deserve encouragement to proceed further. At the time of the Texas Court of Criminal Appeals decision in this case, Jackson v. State, 33 S.W.3d 828 (Tex. Crim. App. 2000), the applicable clearly established Federal law determined by the Supreme Court's decisions were the general principles of relevance underlying F.R.E. 401-403. See McKoy v. North Carolina, 494 U.S. 433, 440-441 (1990)

(citing and quoting <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 345 (1985)). These principles mandated that the execution impact evidence offered by the defendant be admitted.

The most important Supreme Court decision to this case is <u>Payne v. Tennessee</u>, a case that dealt with the admissibility of victim impact evidence, or evidence of the effect of the crime on the victim. 501 U.S. 808 (1991). In <u>Payne</u>, the Court overruled <u>Booth v. Maryland</u>, 482 U.S. 496 (1987) and <u>South Carolina v. Gathers</u>, 490 U.S. 805 (1989). In those cases the Court had held that the Eighth and Fourteenth Amendments disallowed the State's introduction of victim impact testimony because: (1) in capital sentencing, which must focus on the defendant as a uniquely individual human being, victim-impact evidence is wholly unrelated to the defendant's moral blame-worthiness and would impermissibly divert the jury's attention away from its constitutionally mandated inquiry into the defendant's background and record; and (2) the introduction of victim-impact evidence would lead to a disproportionate number of death sentences in cases in which victims' family members are willing and able to express their grief, which the Court characterized as an arbitrary basis for the imposition of the death penalty.

The reason the Texas CCA gave for affirming the exclusion of execution-impact evidence in this case was very similar to the first reason the Supreme Court held in <u>Booth</u> that the Eighth Amendment excluded victim-impact evidence. <u>See Jackson v. State</u>, 33 S.W.3d 828 (Tex. Crim. App. 2000). The Texas CCA rejected the admissibility of execution impact evidence for the reasons stated in <u>Fuller v. State</u>, which held that:

"The contention here focuses on whether a witness felt that appellant should live or die. Since that specific desire does not pertain to appellant's background, character, or record, or the circumstances of the offense, the trial court did not err in prohibiting it." 827 S.W.2d 919, 935-36 (Tex. Crim. App. 1992).

Like <u>Booth</u>, both the Texas CCA and the majority here rely upon the idea that there are only a limited set of aggravating or mitigating factors to which evidence in capital sentencing proceedings may be relevant. <u>Payne</u> expanded the scope of these factors to include the amount of harm caused by the crime, an element that the Court impliedly conceded has no relevance to those traditional factors. The Supreme Court has required the liberal admission of mitigating evidence in death cases that may be relevant to the deathworthiness or "culpability" of

-9-

defendants, and these holdings conflict with the idea that there are limited categories of admissible evidence in death cases to which evidence can be neatly fitted. Penry v. Lynaugh, 492 U.S. 302, 319 (1989).

The idea that evidence relevant to individualized capital sentencing must be constrained to these limited categories is belied by past Supreme Court jurisprudence. For example, in one of the cases we have frequently struggled with, Jurek v. Texas, 428 U.S. 262 (1976), the Court approved an examination into whether the defendant would be a danger in the future as a basis for declining to impose the death penalty - an inquiry that does not necessarily focus on evidence fitting into any of those categories. The Court defined the sentencer's inquiry to be much broader there, holding that "[a] jury must be allowed to consider on the basis of all relevant evidence not only why the death penalty should be imposed, but also why it should not be imposed." Id. at 271. In Skipper v. South Carolina, the Court held that it was appropriate to inquire into the behavior of a defendant during prison because a jury could be convinced that he should be spared the death penalty because he "could lead a useful life behind bars if sentenced to life imprisonment." 476 U.S. 1, 7 (1986). Testimony that

a defendant is beloved and valued by family and friends outside of prison is directly relevant to the question of whether he can lead a "useful life" if sentenced to life imprisonment because it tends to show that other people consider the defendant valuable as a human being and would benefit from the defendant's survival.

The Payne Court has noted that "States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the [death] penalty." Payne, 501 U.S. at 824, quoting McKleskey v. Kemp, 481 U.S. 279, 305-06 (1987). It has long been established by Supreme Court jurisprudence that an individualized determination of deathworthiness requires that the jury be allowed to consider any evidence if "the sentencer could reasonably find that it warrants a sentence less than death." McKoy v. North Carolina, 494 U.S. 433, 441 (1990). Execution impact testimony easily satisfies this sentencing relevance test - it is testimony as to the value of the defendant's life and cost of his death to family and friends, and this value or cost could serve as a basis for the sentencer to determine that the death penalty should not be imposed.

There is also a further difficulty in this particular case in

that victim impact testimony was introduced. In Jackson's case, the State introduced potent evidence of the effects of the murders on the victims' relatives, including evidence that the father of the victims was driven to extreme psychological problems by the murders, moaning throughout the night, rolling around on the ground, and standing around in a dining room all night turning in circles. Jackson, 33 S.W.3d at 840. In fact, the original rationale in Payne for allowing this sort of dramatic testimony was that "virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances...." Payne, 501 U.S. at 822. The point of allowing victim impact evidence was to avoid "unfairly weighting the scales in a capital trial" by allowing the defendant unlimited discretion to introduce evidence of his own mitigated culpability and blameworthiness without allowing the prosecution a chance to respond. Id. at 822-23. The decision of the state court to bar the defendant from introducing similar evidence thus undercuts the constitutional rationale for allowing the introduction of victim impact evidence.

In a case in which the prosecution introduces no victim impact evidence it might be reasonable and fair for the trial

court to exclude execution-impact evidence because of Federal Rule of Evidence 403 concerns. If the value of the victim's life is permitted to be brought before the jury, however, then I see no option under Supreme Court jurisprudence but to permit the defendant to counter this evidence with evidence of the value of his own life. The principles of relevance underlying F.R.E. 403 as well as the fundamental guarantees of due process and fairness require the admission of the defendant's countervailing evidence of a similar nature in order to prevent unfair prejudice to the defendant's case. The discussion in <u>Payne</u> demonstrates that this due process analysis is fundamental to the admissibility of execution impact evidence. Justice O'Connor stated in her concurring opinion that:

> We do not hold today that victim impact evidence must be admitted, or even that it should be admitted. We hold merely that if a State decides to permit consideration of this evidence, "the Eighth Amendment erects no per se bar." Ante, at 2609. If, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment.

_Payne_, 501 U.S. at 831. Justice Souter emphasized "the trial judge's authority and responsibility to control the proceedings consistently with due process, on which ground defendants may object and, if necessary, appeal." _Id_. at 836 (Souter, J., concurring).

Furthermore, Justice O'Connor's concurrence demonstrated the due process analysis by which she, Justice White and Justice Kennedy, determined that there was no due process violation in that particular case. Under their rationale two factors served to alleviate the effect of the victim impact evidence in _Payne_ and to prevent if from being unfairly prejudicial: its brevity, in that the grandmother of the three year old son of one victim testified that he cried for his mother and baby sister and could not understand why they did not come home; and its redundance, because the jury was fully informed in the guilt phase that the three year old was also stabbed but survived in the same criminal transaction that took the lives of his mother and sister. The fact that the victim impact testimony was redundant and cumulative decreased its prejudicial effect in the sentencing hearing. _Payne_, 501 U.S. at 833. Here, as discussed above, the victim impact testimony was dramatic and was not redundant, requiring the ability of the defense to

-14-

respond in kind with evidence of its own on the impact of the execution on the defendant's family.

Because the petitioner has made a substantial showing of the denial of his constitutional rights by the state court's exclusion of his execution impact evidence, and because the majority short-circuited its inquiry into whether the issues are adequate to deserve encouragement to proceed further in direct conflict with the Supreme Court's admonitions in Miller-El, I respectfully dissent.