[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20, 2010
JOHN LEY
CLERK

No. 09-15027
Non-Argument Calendar

_____

D. C. Docket No. 08-01541-CV-JEO-S

RODERICK PAIR, JR.,

Petitioner-Appellant,

versus

JOHN CUMMINS,
ATTORNEY GENERAL OF THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 20, 2010)

Before CARNES, HULL and FAY, Circuit Judges.

PER CURIAM:

Roderick Pair, Jr., an Alabama state prisoner serving a 20-year sentence for

first-degree sodomy, appeals the district court's denial of his counseled 28 U.S.C. § 2254 federal habeas petition. Pair's former girlfriend claimed that he visited her late one night, threw her to the floor, held her down, and anally raped her. At trial, Pair insisted he never saw the victim that night and suggested she fabricated the rape allegation to punish him for breaking up with her. The jury did not believe him, and he was convicted. On collateral review, the state trial and appellate courts rejected his claims of ineffective assistance of counsel. Pair then filed this habeas petition. The district court denied the petition, but granted a certificate of appealability.

Because the district court's COA did not enumerate the issues for review, we will address each of the two issues Pair raises on appeal. See Putman v. Head, 268 F.3d 1223, 1227–28 (11th Cir. 2001). Pair contends he was denied effective assistance of counsel because his trial attorney failed to (1) secure the assistance of an expert in the area of rape allegations, and (2) offer into evidence two postcards sent to Pair by the victim.

When considering a district court's denial of a § 2254 petition, we review the court's factual findings for clear error and its legal determinations de novo. Owen v. Sec'y for the Dep't of Corr., 568 F.3d 894, 907 (11th Cir. 2009). A claim of ineffective assistance of counsel presents a mixed question of law and fact

2

which we review de novo. Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998). In a § 2254 proceeding, however, we are essentially reviewing a state court's decision on the issue. Putman, 268 F.3d at 1240. In so doing, we will not grant habeas relief on a claim that was denied on the merits in state court unless the state court decision: "'(1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Id. (quoting § 2254(d)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. Williams v. Taylor, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000). Specifically,

> [a] state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.

Putman, 268 F.3d at 1241. On the other hand:

> [a] state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. . . . [or] unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context.

3

"Notably, an 'unreasonable application' is an 'objectively unreasonable' application." Id. Further, "[c]learly established federal law is not the case law of the lower federal courts, including this Court," but only "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." Id. (quotation and alteration omitted).

In the context of an ineffective assistance claim raised in a § 2254 petition, the inquiry turns on whether the state court's decision on that claim was contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). See Woodford v. Visciotti, 537 U.S. 19, 22, 24–25, 123 S. Ct. 357, 358–60 (2002). Under the "unreasonable application" prong of § 2254(d)(1), the habeas petitioner bears the burden "to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Id. at 25, 123 S. Ct. at 360. "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (quotations omitted). Moreover, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

4

To succeed on an ineffective assistance claim under <u>Strickland</u>, a petitioner must show that his Sixth Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687, 697, 104 S. Ct. at 2064, 2070. A court need not address both elements of an ineffective assistance claim if the petitioner fails to establish one of them. <u>Id.</u> at 697, 104 S. Ct. at 2069. However, if a state habeas court denies an ineffective assistance claim without addressing one of the elements, the federal habeas court reviews that element <u>de novo</u>. See <u>Porter v. McCollum</u>, 130 S. Ct. 447, 452 (2009).

The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687–88, 104 S. Ct. at 2064–65. The standard is that of a reasonable attorney, not a "paragon of the bar" or an "Aristotle" or a "Clarence Darrow." <u>Dill v. Allen</u>, 488 F.3d 1344, 1354 (11th Cir. 2007); <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 11, 124 S. Ct. 1, 7 (2003). Moreover, judicial review of an attorney's performance is "highly deferential," and the court must "eliminate the distorting effects of hindsight" and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct.

5

at 2065. In so doing, the court must "indulge a strong presumption" that the attorney's conduct was objectively reasonable. Id. A petitioner fails to overcome that presumption if the challenged conduct "might be considered sound trial strategy." Id. (quotation omitted).

Pair identifies two omissions by trial counsel he says constituted deficient performance. First, he argues that counsel should have presented an expert witness to testify that the assault could not have happened the way the victim described it. Pair offers an affidavit by one such expert, a former detective who had investigated numerous rape cases. That expert opined that although it was "possible" for an average-sized male to forcibly rape a female anally, it was "highly difficult" and unlikely to be done without restraints or help from a third party. Trial counsel, who had more than thirty years' experience trying criminal cases, said he did not offer such testimony because he believed juries tended to discount experts as being biased in favor of the party who hired them. At most, the expert could have testified that it would have been difficult for Pair to overpower and assault the victim in the manner she described, not that it would have been impossible.

Pair also complains that his trial counsel failed to introduce two postcards the victim wrote to Pair several weeks before the rape, in which she said that she missed him and wanted to see him again. The cards might have been used to

undermine the victim's testimony that she was the one who broke off their relationship. Counsel admitted he had no strategic reason for omitting the postcards, but simply forgot and misplaced them in his office. However, counsel did expose several inconsistencies in the victim's account of the relationship, and got her to admit on cross-examination that she continued to call Pair right up until the night of the rape, which is more than the postcards would have shown. The state courts found that the issue of who broke up with whom had been "thoroughly covered" at trial. We need not decide whether either of counsel's omissions rose to the level of defective performance, however, because Pair has failed to show a reasonable probability that they affected the outcome of his trial.

To succeed on his ineffective assistance claims, Pair must establish prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. It is not enough for him to show that his counsel's deficient performance had "some conceivable effect" on the jury's verdict. Id. at 693, 104 S. Ct. at 2067–68. Instead, Pair must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Pair's trial counsel faced significant hurdles in presenting his defense. Pair's

7

insistence that he was never at the scene of the rape was countered by strong evidence that someone had forcibly sodomized the victim.[1] The victim's story was corroborated by testimony from the nurse who examined her three hours after the fact, and by photographs that documented extensive lacerations and bruising consistent with forcible sexual assault. Not only did she have "the worst . . . rectal trauma" the nurse had seen in five years' experience performing forensic exams on rape victims, but the victim also had bruises on her upper arms, wrists, and ankles consistent with being held down.[2] There was no possibility of mistaken identification, since Pair and the victim knew each other, and there was nothing to suggest that anyone else had attacked her.

For Pair to win an acquittal based on his alibi defense, he needed to convince the jury not only that the victim had falsely accused him but also that she either had somehow inflicted those injuries on herself, or had been raped by someone else and deliberately chose to frame Pair for the crime. Pair could not offer the jury any reason why the victim might have done that, beyond the mere possibility that she

---

[1] Trial counsel thought Pair would have had a "great defense" if he claimed they had consensual sex that "got wild," especially since the victim gave inconsistent accounts as to whether they had been having consensual intercourse before Pair forcibly sodomized her. However, Pair refused to offer such a defense and continued to insist he was not even present on that night.

[2] The State did not recover any DNA or other physical evidence linking Pair to the victim's injuries.

was jealous or angry at him for leaving her.[3] Simply pointing out inconsistencies in the victim's testimony as to how their relationship had ended was not enough. The jury heard about a number of those inconsistencies and still found the victim more believable than the defendant. Furthermore, once Pair took the stand to tell his side of the story, there was no way to prevent the jury from hearing about his prior felony conviction.

It was against this background that the state courts determined Pair had failed to show prejudice because there was no reasonable probability that the jury's verdict would have been different had counsel presented the expert testimony and the postcards. Given the facts, we cannot say the state courts' determination was unreasonable. Accordingly, we affirm the district court's denial of Pair's habeas petition.

**AFFIRMED.**

---

[3] Because he did not raise it in appellate briefing, Pair abandoned his earlier argument that trial counsel was ineffective for not presenting expert testimony that the victim might have been mentally unbalanced. See United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir. 2004) (per curiam). In any event, Pair has never produced any medical or psychiatric records to support such a conclusion.