Filed 2/4/14  P. v. Waters CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICHARD BELDON WATERS,<br><br>        Defendant and Appellant. | A134789<br><br>(Contra Costa County<br>Super. Ct. No. 51001734) |

A jury found defendant Richard Beldon Waters guilty of two counts of armed robbery involving the personal use and discharge of a firearm (Pen. Code, §§ 211, 212.5, subd. (c), former §12022.53, subds. (b) & (c)).  After determining that defendant had had three prior felony convictions (*id*., § 667.5, subd. (b)(1)), two of which qualified as serious (*id*., § 667, subd. (a)(1)) and strikes (*id*., § § 667, subds. (b)-(i), 1170.12), and denying defendant's motion to strike his strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court sentenced him to state prison for an aggregate term of 55 years to life.  Defendant's sole contention on this timely appeal is that he was deprived of his constitutional right to the effective assistance of counsel because his trial attorney failed to investigate and present an alibi defense.  We conclude this contention is without merit, and affirm.

### BACKGROUND

The evidence adduced at trial showed that on the afternoon of October 3, 2009, two men entered Matthew Fink's bar where, in addition to Fink, an employee and two customers were present.  One of the men was wearing a bandana as a mask.  This man

brandished a gun at Fink; the other man displayed a knife. Money was demanded and surrendered. The man with the bandana fired a shot at Fink just before the two men ran out of the bar, and drove away in a pickup truck.

The truck, and defendant, were located by police within an hour. The engine area was emanating heat, indicating recent use. Defendant matched the broadcast description ("white male wearing a khaki shirt, long sleeve, and blue jeans"). The truck was registered to defendant, and its keys were found on defendant (who was searched because he was on parole). Defendant's DNA was found on a bandanna wrapped around the gun in the truck's engine compartment. Only one of the gun's cartridges had been fired. A sheath knife and badge with defendant's name on it were found under the truck's seat. Fink tentatively identified the truck ("it looked like"), and more positively identified the bandana as the one worn by the gunman. When first confronted with defendant (whom he knew but did not then recognize), Fink made a tentative identification: defendant's height was "similar," and he "could be the . . . guy with the mask." When later told that police had arrested defendant for the robbery, Fink responded, "it looks like you got the right guy," in part because he associated defendant's way of walking with "when that guy walked out with the gun on me, you don't forget that." Fink's brother, who was in the bar, was unable to make an identification of defendant, but he did think the bandanna was the one worn by the gunman.

Defendant was tested on the day of his arrest for the presence of gunshot residue, and none was found on him. But defendant's expert did concede that "a gun could . . . have been fired by a person even if no gunshot residue is found." No usable fingerprints were found on the knife. A fingerprint on the gun was not defendant's. DNA from several other persons was also on the bandanna.

Defendant did not testify.

As noted, the jury convicted defendant, following which he moved for a new trial on several grounds, one of which was that he "was denied effective assistance of counsel because his attorney withheld a defense that was requested by him." The motion was supported with a declaration by defendant, the gist of which was that at the time of the

2

robbery, he was at a party being hosted Scott Kirby, near where he was arrested. While at the party, defendant loaned his truck to "a person named Scott Currier," and therefore "I was not in possession of my truck" at the time of robbery. "On October 3, 2009, I was never at or near the ABC Rendezvous Bar . . . [¶] These facts were conveyed to my trial counsel. [¶] . . . [¶] On several occasions prior to and during trial I demanded that my trial counsel present this evidence in my defense of the charges. [¶] I was willing to testify on my own behalf at the trial and requested that my trial counsel allow me to so testify. It became a contentious issue and he would not agree to my testifying on my own behalf."

Attached as an exhibit to defendant's declaration was a "Statement of Scott Kirby" prepared by a private investigator dated January 10, 2011. The statement corroborated defendant's version of being at the party without his truck. However, Kirby also stated that defendant had in effect left the party before it ended. Kirby did not provide an iron clad timeline of defendant's presence at the party, and, indeed, allowed that defendant may even have left without Kirby's knowledge. Still, Kirby was emphatic that " 'Rickey . . . was here. He couldn't have robbed the bar.' " Kirby promised to try to have "anyone with information pertaining to Rickey's whereabouts on the day of the barbeque/robbery" contact the investigator.

The motion was presented by counsel appointed for that sole purpose, after defendant's retained trial counsel was allowed to withdraw. Following an evidentiary hearing at which defendant and his former counsel testified, the trial court denied the new trial motion.

## REVIEW

Ordinarily, this direct appeal would impose a difficult burden of proof on defendant. " ' " . . . 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] omission.' " [Citation.]' [Citation.] If the record on appeal ' " 'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and

3

failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected," ' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 876.) Here, however, we are not dealing with a silent record. Counsel provided that explanation when he testified at the new trial hearing. (See *People v. Williams* (2013) 56 Cal.4th 630, 690-691 [where factual basis for ineffective assistance of counsel claim is litigated as part of defendant's new trial motion, reviewing court may address that claim on direct appeal].)

Defendant's trial counsel's response to his former client's accusation was categorical. He did advise defendant not to testify, but he never would, and never did, refuse to let defendant testify—"I don't have that authority, and I would never say that to a defendant." "[I]f a defendant tells me, in no uncertain terms, that I want to testify, . . . they get to testify . . . [¶] . . . [O]nce they say that's what we really want to do, even after I explained to them the disadvantages in a particular case, they testify" As for defendant's claim that he was prevented from testifying, "that didn't happen."

As for the alibi defense, counsel explained why it was not used: "[Defendant] gave me the names of some witnesses who were potential alibi witnesses. I sent an investigator to speak to them . . . [¶] And I was advised by my investigator and . . . by my client, at least two, maybe all three of them were heavy drug users. One of them, when my investigator went to speak to him, there was a drug transaction taking place in the hallway. [¶] . . . [B]ut most importantly, the alibi witnesses were not consistent with each other, and at least one of them was wildly inconsistent with the undisputed facts in the case.[1] [¶] . . . [¶] Well, there's no surer way to a conviction than presenting an alibi defense that the jury doesn't believe. And so . . . [¶] . . . [¶] I discussed it with him. It

---

[1] To wit: "[O]ne of the alibis placed him out of custody when he was already arrested which suggested to me the alibi would unravel rather quickly once it was [tested] by cross-examination." And "there were differences in terms of the timing of the party, and one of them—I can't remember if it was Kirby or the other that he saw him there. He really wasn't keeping an eye on him [defendant]. So he couldn't vouch for his presence for anything longer than saying that he was there."

was not . . . like I told him you can't present an alibi defense.  [¶] We discussed it, and we came to a joint conclusion that it wouldn't be a good idea.  I mean, it went back and forth.  I explained to him my reasoning for not presenting the alibi defense, and he went along with it."  Defendant never demanded that the alibi defense be used.

Defendant's testimony was that "I told him I want to testify, and he . . . said 110 percent, no."  Defendant discounted the importance of inconsistencies in the testimony of alibi witnesses:  "because everybody was drinking and there was drugs there.  So, you know, it was a big barbecue and it was . . . a year and a half later when they finally did testify [*sic*]."  Defendant admitted on cross-examination that he has prior convictions, "[a]nd that's the reason why Mr. Morris counseled you not to take the stand."  When asked by the court, defendant acknowledged that two of his alibi witnesses were drug users, and the third erroneously "had you out of custody when you had actually already been arrested," "[b]ut I felt . . . that the jury should make that decision, not Mr. Morris."

" '[T]he trial court has broad discretion in ruling on a new trial motion . . . ,' and its 'ruling will be disturbed only for clear abuse of that discretion.'  [Citation.].  In addition, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.'  [Citation.]"  (*People v. Verdugo* (2010) 50 Cal.4th 263, 308.)

In the course of denying defendant's new trial motion, the court made an express "credibility finding" in favor of defendant's former counsel:  "I found his testimony to be credible."  The court further noted that former counsel was "a very experienced attorney.  He . . . represented the defendant ably.  He has 40 years of experience . . . he's a very, very experienced attorney."

Certainly a criminal defendant has the absolute right to testify.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.)  But the credibility finding made by the trial court is binding here.  (*People v. Verdugo*, *supra*, 50 Cal.4th 263, 308.)  That finding establishes that the court accepted counsel's version that the decision not to testify was made by defendant himself, and was not imposed on him.

5

As for the alibi defense, defendant did not call Kirby or Currier to testify at the hearing, and did not produce declarations by them as to their testimony. The weaknesses of the alibi witnesses, as described by defendant's former counsel, must therefore be accepted here. The legal question, then, is the decision not to call these persons to testify. That decision is tactical one entrusted to counsel. (See *People v. Vines*, *supra*, 51 Cal.4th 830, 878 [decision not to call witness because of concern over harmful material a valid tactical choice]; *People v. Floyd* (1970) 1 Cal.3d 694, 709-710 [decision on which witnesses to call is tactical choice, and not calling witness with prior criminal record to support alibi defense well within range of competence].)

"A defendant does not have the right to present a defense of his own choosing." (*People v. Welch* (1999) 20 Cal.4th 701, 728.) We agree with the trial court that defendant failed to demonstrate that trial counsel was professionally deficient, still less that it reached constitutional magnitude. (See *Yarborough v. Gentry* (2003) 540 U.S. 1, 8; *People v. Maury* (2003) 30 Cal.4th 342, 389.) There was no error or abuse of discretion in the denial of defendant's new trial motion. (*People v. Verdugo*, *supra*, 50 Cal.4th 263, 308.)

## DISPOSITION

The judgment of conviction is affirmed.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Haerle, J.