# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 00-3834, 00-3778

DEMETRIUS HENDERSON,

*Petitioner-Appellee,*
*Cross-Appellant,*

*v.*

KENNETH R. BRILEY, Warden,
Stateville Correctional Center,

*Respondent-Appellant,*
*Cross-Appellee.*

———————

On Remand from the Supreme Court of the United States.

———————

SUBMITTED MARCH 3, 2003—DECIDED JANUARY 16, 2004

———————

Before COFFEY, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* In an order dated March 3, 2003, the Supreme Court of the United States vacated the judgment of this court in *Henderson v. Walls*, 296 F.3d 541 (7th Cir. 2002), and ordered this court to reconsider its decision in light of *Woodford v. Visciotti*, 537 U.S. 19 (2002). We have now done so. We have concluded that the judgment of the District Court conditionally granting the writ of habeas corpus must be reversed in light of *Visciotti* and subsequent decisions of the Supreme Court.

**I**

In 1987, a jury convicted Demetrius Henderson of kidnapping, gang raping, and murdering Kimberly Boyd. Henderson waived his right to a sentencing jury, and the judge sentenced him to death. The judge also imposed a 45-year sentence for the aggravated criminal sexual assault and a 10-year sentence for the aggravated kidnapping. The Illinois Supreme Court upheld Henderson's convictions on direct appeal, although it reduced his sentence for the aggravated criminal assault from 45 years to 30 years. See *People v. Henderson*, 568 N.E.2d 1234 (Ill. 1990). It denied Henderson's petition for rehearing, and the United States Supreme Court denied his petition for a writ of certiorari. See *Henderson v. Illinois*, 502 U.S. 882 (1991). Henderson then sought post-conviction relief under Illinois law, see 725 ILCS 5/122-1 *et seq.*, but was unsuccessful. See *People v. Henderson*, 662 N.E.2d 1287 (Ill. 1996), *cert. denied*, *Henderson v. Illinois*, 519 U.S. 953 (1996).

Having exhausted his state remedies, Henderson filed a petition for a writ of habeas corpus in the district court. He alleged, among other things, that the prosecution intentionally discriminated against African-Americans in its use of peremptory challenges to prospective jurors, in violation of the rule set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court granted Henderson relief on his *Batson* claim, see *U.S. ex rel. Henderson v. Page*, No. 97 C 1079, 2000 WL 1466204 (N.D. Ill. Sept. 29, 2000), and we affirmed in *Henderson v. Walls*, *supra*. In that opinion, we held that the Illinois Supreme Court had unreasonably applied *Batson* in its decision on direct appeal when it refused to consider evidence of similarities between stricken black jurors and empaneled white jurors at the *prima facie* stage. We recognized that a comparative analysis is not required under *Batson*. Nevertheless, we held that when this kind of comparative evidence is actually presented by

the defendant, it may not be rejected on lack of relevance grounds. As we understood the record, Henderson's case was governed by the latter rule, and thus we affirmed the district court's decision to grant the writ. See *Henderson*, 296 F.3d at 549.

On November 20, 2002, the State filed a petition for a writ of certiorari with the United States Supreme Court. While the Court had the petition under consideration, then-Illinois Governor George Ryan issued a blanket clemency to all state inmates on death row. Henderson was among those whose death sentence was commuted to life in prison without parole. On March 3, 2003, the Court vacated our judgment and remanded for further consideration in light of its decision in *Visciotti.* Like our case, *Visciotti* involved the scope of deference a federal court owes to state court decisions under 28 U.S.C. § 2254(d), as amended in 1996 by the Anti-Terrorism and Effective Death Penalty Act. The specific question in *Visciotti* was whether the California state courts had erred when they rejected a claim of constitutionally ineffective assistance of counsel claim, either by deciding the question in a way contrary to *Strickland v. Washington*, 466 U.S. 668 (1984), or by unreasonably applying *Strickland.* The Ninth Circuit had concluded that Visciotti had indeed been denied effective assistance of counsel during the penalty phase of his trial and granted relief, but the Supreme Court reversed. In the course of its opinion, the Court stressed that federal courts must comply with the "highly deferential standard for evaluating state-court rulings," *Visciotti*, 537 U.S. at 24, quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).

In its Statements of Position pursuant to Circuit Rule 54, filed on April 22, 2003, the State argued that this court's earlier decision ran afoul of the obligation to defer to all but "unreasonable" decisions of the state courts. The Illinois Supreme Court's resolution of the *Batson* claim, it claimed,

did not stray over that line, and thus Henderson's petition had to be rejected. Henderson argued that our decision was entirely consistent with *Visciotti* and asked us to reaffirm our original judgment. Neither statement addressed the effect, if any, of former Governor Ryan's general commutation of death sentences, and thus this court issued an order on April 30, 2003, asking Henderson to clarify whether his sentence had been commuted and, if so, whether he wished to pursue this litigation. He responded on May 12 that his sentence was indeed now one of life in prison, but that this did not affect his interest in continuing with his *Batson* claim (which, if successful, would entitle him to a new trial and new sentencing, though in any such proceedings he would once again be at risk of receiving a new capital sentence). In light of Henderson's position, we have therefore proceeded with the merits of the remand.

## II

According to 28 U.S.C. § 2254(d)(1), a federal court may grant a petition for a writ of habeas corpus only if the state court's adjudication of the relevant claims "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." As we noted in our original opinion and as the Supreme Court reiterated in *Visciotti*, review under this statute is "severely restricted." *Henderson*, 296 F.3d at 545 citing *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999). In *Visciotti*, the Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly." *Visciotti*, 537 U.S. at 24-25. This means that the question before a federal court on collateral review under this part of the statute is only whether the state court's decision was so

far out-of-bounds as to be "unreasonable." In making that decision, we must take into account both the procedural and the substantive aspects of the state court's action.

Upon reconsideration in light of the broad message in cases like *Visciotti* and *Yarborough v. Gentry*, 124 S.Ct. 1, 540 U.S. ___ (2003), we are now persuaded that it would be inconsistent with § 2254(d) to grant Henderson's petition for a writ of habeas corpus. As explained in our original opinion, the record in this case came to us in an unusual posture. *Henderson*, 296 F.3d at 545-46. Deficiencies in the trial court record led the Illinois Supreme Court to conduct its own review of the facts concerning the peremptory challenges exercised by the parties. In a sense, that court constructed an after-the-fact *Batson* process, and it decided on the basis of the record as a whole that there was no showing of purposeful discrimination. While the court may have been careless with its language along the way, as we explain below, its comment about the use of comparative evidence at the *prima facie* stage was somewhat artificial, since it was fashioning the entire framework for itself. At the end of the day, its conclusion that the record as a whole did not compel a finding of intentional discrimination in the use of peremptory challenges is not so unsupported as to be branded "unreasonable."

This does not mean, we stress, that the fundamental legal analysis on which our original opinion was based was in error. Indeed, in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), the Supreme Court provided support for our approach when it explicitly considered comparative data showing similarities between rejected black jurors and empaneled white jurors in determining the merits of a *Batson* claim, *id.* at 343. *Miller-El*, of course, was about the appropriate standard for issuance of a certificate of appealability based on a prisoner's *Batson* claim, not about the ultimate decision whether a writ should issue. *Id.* at 341-42. But in a more

conventional *Batson* case, where the question arises at the trial level whether comparative evidence actually proffered by a defendant should be admitted as relevant, the answer remains yes.

Nothing in *Visciotti* changes our resolution of Henderson's remaining two claims, which came to us on a cross-appeal. See *Henderson*, 296 F.3d at 551-56. Henderson is not entitled to relief for ineffective assistance of counsel, see *id.* at 552-54, or for an ineffective waiver of his right to a sentencing jury, see *id.* at 554-56. Our decision leaves Henderson where he would have been had he never filed a habeas petition at all—that is to say, convicted of the crime, but now relieved of the death sentence because of former Governor Ryan's grant of clemency while this case was pending.

## III

For these reasons, we REVERSE the judgment of the district court with respect to Henderson's *Batson* claim. We AFFIRM the judgment of the district court with respect to Henderson's claims based on ineffective assistance of counsel and ineffective waiver of a sentencing jury.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—1-16-04