**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KEELON T. JENKINS,

                Petitioner - Appellant,

v.

MICHAEL S. EVANS, Warden,

                Respondent - Appellee.

No. 11-15030

D.C. No. 3:05-cv-02003-MHP

MEMORANDUM[*]

On Remand from the En Banc Court

Before: WALLACE, FARRIS, and BYBEE, Circuit Judges.

Before us on remand from the en banc court is Jenkins's claim that his trial counsel rendered ineffective assistance, "which is based on his allegation that trial counsel attacked Jenkins's credibility at trial." *McDaniels v. Kirkland*, 627 Fed. Appx. 672, 673 (9th Cir. 2015) (unpublished disposition).

Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, we are limited to deciding whether the California Supreme Court's summary denial of habeas relief was: (1) "contrary to,

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). When reviewing an ineffective assistance claim through the lens of habeas, our review is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Under this standard of review, we hold that the California Supreme Court did not unreasonably apply *Strickland* in summarily denying Jenkins's ineffective assistance claim. Jenkins's claim of ineffective assistance is governed by the familiar two-part ineffective assistance of counsel test provided by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, Jenkins must first show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Even if we assume that Jenkins's attorney undermined Jenkins's credibility (which the State contests), the California Supreme Court could have reasonably decided that counsel did not perform deficiently. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) (rejecting

an ineffective assistance of counsel claim where an attorney called his client a "bad person, lousy drug addict, stinking thief, [and] jail bird"). Moreover, even if counsel performed deficiently, the California Supreme Court could have rejected Jenkins's claim because he failed to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We therefore affirm the district court's decision denying Jenkins's claim.

Jenkins's motion for leave to file his supplemental brief is granted.

**AFFIRMED.**

*Jenkins v. Evans*, No. 11-15030

BYBEE, Circuit Judge, dissenting:

At Petitioner Keelon Jenkins's murder trial, a vocal and dramatic dispute between Jenkins and his lawyer played out in front of the jury. Jenkins and his counsel agreed that Jenkins shot a Brink's truck guard after what he believed to be a staged robbery went awry,[1] but disagreed as to the identity of the man who orchestrated that hold-up: Jenkins maintained—and testified at trial—that a man named Frank Valentine hatched the plot, while Jenkins's counsel repeatedly told the jury that a man named Anthony Young was responsible. Although I recognize that, under AEDPA, our review of Jenkins's ineffective assistance claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), I nonetheless think Jenkins has shown that "the state court's application of the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] standard was unreasonable," *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Accordingly, I would grant Jenkins's habeas petition and I respectfully dissent from my colleagues' decision holding otherwise.

---

[1] The defense theory was that Jenkins had been informed by the man that coordinated the staged robbery that the Brinks guard was in on the plot and would help facilitate the theft of money from his truck in exchange for a cut of the loot. Because Jenkins believed that the robbery was staged, the defense team posited, he had not committed murder during the commission of a felony and was therefore not liable for first-degree murder under the felony-murder rule.

I

The conflict between Jenkins and his counsel over the identity of the man who masterminded the robbery repeatedly surfaced before and during the trial. For example, before his counsel could offer an opening statement to the jury, Jenkins objected and explained:

> I've repeatedly told counsel that I don't want him to give a statement that . . . [accuses] someone I've told him numerous times that has no involvement[.] . . . What he's doing is contradicting my testimony which is going against me. Therefore, he's serving as the prosecution against my defense if he's going to do this.

The court overruled Jenkins's objection and allowed his counsel to proceed with opening statements—a statement counsel described to the jury as "unconditionally unauthorized by [his] client who [did] not want [him] to make this statement." Jenkins's counsel then pointed the finger at Anthony Young, informed the jury that three witnesses would testify to Young's involvement in the staged hold-up, and explicitly prepared the jury to hear testimony from his client contradicting the theory that he had just laid out. As promised, Jenkins provided testimony at odds with his counsel's opening statement, explaining that Valentine masterminded the robbery-gone-wrong and denying that Young was involved.[2] Despite his

---

[2] Robert McDaniels, Jenkins's co-defendant, also testified that Young had no involvement and that Valentine planned the robbery.

representations to the contrary, however, Jenkins's counsel did not follow through with the presentation of evidence connecting Young—rather than Valentine—to the plot.

By closing arguments, the prosecutor had keyed into this conflict, framing the trial as "all about credibility," and ripping into the disagreement between Jenkins and his counsel:

> And the problem I was having is that I'm hearing too many masterminds. I'm hearing Anthony Young, then I'm hearing Frank Valentine, and then in [defense counsel's] opening statement he told you he proved several things that he was not able to prove [like] Anthony Young was the mastermind.
>
> . . .
>
> [And that's] because somewhere midstream Frank Valentine came into the picture. And here's a simple question: How many innocent people have two different defenses? How many innocent people have different theories on how they got to that location? This is clearly a schism somewhere in the defense.
>
> . . .
>
> [Defense counsel] made a very interesting comment yesterday when he said he frankly didn't believe his client in that Frank Valentine was the mastermind. The reason why I find that interesting is because if Mr. Jenkins is going to lie to his attorney, what makes you think he's not willing to lie to you because clearly they have different opinions as to how to beat this case.

For his part, Jenkins's counsel doubled down during his closing argument on the discrepancy, reminding the jury once again that he thought his client was lying on the witness stand:

3

There are a number of theories of why [the defendants] went [to the scene of the robbery]. One is what they told you. Now, if you think that I believe everything that they said, you already know the answer to that because I started in my opening statement by telling you that I believe the person who set this up is someone other than the person about whom they testified. And I've had disagreements with my client about that for years. Nonetheless, I believe that only because of the evidence in this case.

The jury returned with a conviction for first-degree murder and the court sentenced Jenkins to life in prison without the possibility of parole. In a summary denial, the California Supreme Court rejected Jenkins's habeas petition raising the ineffective assistance claim now before us.

## II

The majority holds that "the California Supreme Court could have reasonably decided that counsel did not perform deficiently." Mem. Dispo. 3. I disagree. Jenkins's counsel essentially called his client a liar in his opening and closing statements, and completely undermined Jenkins's testimony and credibility in front of the jury. And for what? As the prosecutor pointed out, Jenkins's counsel didn't even put up the evidence he promised to bring forward that would show that it was Young—not Valentine—who masterminded the staged robbery. It is one thing to defer to the good-faith strategic decisions of counsel; it is a very different thing to endorse counsel's decision to present a theory of defense that he

4

did not prove and that explicitly contradicted the testimony put forward by his client. Because Jenkins's counsel impeached the credibility of his own client without offering alternative evidence to repair the damage he caused, I think counsel's performance fell below an objective standard of reasonableness.

I also think it is clear that counsel's inadequate performance prejudiced Jenkins's defense. The Supreme Court has explained that to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and defined "a reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Here, the jury required three days of deliberations to reach a verdict on facts that—save for the staged-robbery/felony-murder question—were relatively straightforward. Additionally, as outlined above, the prosecutor capitalized on the conflict between Jenkins and his counsel, repeatedly calling Jenkins's truthfulness into question and making "credibility" the centerpiece of his case and his closing argument. Finally, because Jenkins's counsel decided to destroy his client's defense theory without providing an alternate theory in its place, he left Jenkins without much of a defense at all. Under these facts—and even considering AEDPA's demanding standard of review—I think Jenkins has adequately demonstrated that his counsel's actions

5

have "undermine[d] confidence in the outcome" of his trial.  *Id.*

I respectfully dissent.[3]

---

[3] I concur, however, in the majority's decision to grant Jenkins's motion for leave to file his supplemental brief.