# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 JOHN-BRIAN HUGHES**
**United States Army, Appellant**

ARMY 20130783

Headquarters, 1st Infantry Division and Fort Riley
Jeffery R. Nance, Military Judge
Lieutenant Colonel John A. Hamner, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick J. Scudieri, JA (on brief); Lieutenant Colonel Melissa R. Covolesky, JA; Lieutenant Colonel Charles D. Lozano, JA; Major Christopher D. Coleman, JA; Captain Cody D. Cheek, JA (on supplemental brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Major Lionel C. Martin, JA (on brief).

28 July 2017

------------------------------------------------------------------
SUMMARY DISPOSITION ON RECONSIDERATION
------------------------------------------------------------------

MULLIGAN, Senior Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of various specifications involving resisting apprehension, making a false official statement, premeditated murder, larceny of non-military property of a value of less than $500.00, larceny of military property of a value of less than $500.00, and wrongful appropriation of a motor vehicle in violation of Articles 95, 107, 118, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 907, 918, and 921 (2006) [hereinafter UCMJ].  The panel sentenced appellant to a dishonorable discharge, confinement for life without the possibility of parole, forfeiture of all pay and allowances, and a reduction to the grade of E-1.  The convening authority approved the adjudged sentence.

We previously considered appellant's various assignments of error, including those submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and summarily affirmed the findings of guilty and sentence in this case. *United States v. Hughes*, ARMY 20130783 (Army Ct. Crim. App. 23 Jun. 2016). In a footnote to that decision, we noted appellant failed to submit "accompanying affidavits, unsworn declarations under penalty of perjury, or any signed statements to support [his] claims" in support of his *Grostefon* claims. *Id.* n2. Thereafter, we granted appellant's request to submit additional matters, to include his sworn declaration, and his request to reconsider our prior opinion. We again find appellant's assignments of error without merit. However, we take the opportunity here to briefly address one issue, personally raised by appellant, that his defense counsel provided deficient representation by conceding certain facts during her closing argument.

## BACKGROUND

Appellant and Private (PVT) TL spent the night of 12 May 2013 at the home of an NCO where appellant was temporarily residing. Private TL asked to stay the evening as he was going to take appellant to the motor pool in the morning where appellant was scheduled to perform extra duties beginning at 0900. Appellant and PVT TL departed early on the morning of 13 May 2013. Later that day, PVT TL was discovered in his barracks room, stabbed to death. Key card logs showed PVT TL's room was last entered at around 0919 hours that morning.

Appellant showed up to the motor pool late, at around 1000 hours, in Private TL's car. Later that morning or early afternoon, appellant took a HMMMV off post, which eventually broke down. After a series of events, appellant was apprehended by military police who found among appellant's possessions PVT TL's military ID card and barracks room key card. The ensuing investigation also linked a knife, set down by appellant prior to his attempt to flee from the military police, that later tested positive for both appellant's and PVT TL's DNA. Appellant's fingerprint was found in PVT TL's room.

Defense counsel's overarching theme during closing argument centered on the many questions left unanswered by the government's investigation of the murder and the evidence presented at trial. Early in the argument, defense counsel posited one theory of how the evidence could be read, suggesting PVT TL's plans to drive appellant directly to extra duty changed so that appellant could go to the barracks and change. Once there, defense counsel suggested, PVT TL decided to "crash," and gave appellant his room key card and keys so as not to disturb PVT TL when appellant returned them. Defense counsel then explored the many aspects of the evidence that simply did not make sense, such as the fact appellant showed up for extra duty, the apparent lack of any motive for the crime, the sloppiness of the evidence collection and testing, and other possible explanations for the murder.

2

## **LAW AND ANALYSIS**

Appellant asserts his counsel during closing argument "conceded" that appellant was at the crime scene. Appellant claims he was not informed by his counsel that such a concession would be made and would not have granted his counsel permission to make such a concession. This raises the question whether defense counsel must consult with an accused on every strategic decision during the course of a trial and whether the failure to do so constitutes ineffective assistance of counsel. Under the circumstances of this case, we do not find defense counsel's argument constituted a concession—much less deficient performance.

To prevail on an ineffective assistance claim, appellant bears the burden of proving that (1) defense counsel's performance in making this concession was deficient, and (2) appellant was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). As to the first prong, there is a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id*. at 689. As to the second prong, appellant's burden is to show "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Id*. at 694. To demonstrate this prejudice, the question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "It is not enough to show that the errors had *some conceivable* effect on the outcome." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (emphasis added).

A defendant has the "ultimate authority" in decisions to exercise or waive basic trial rights, including "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Wainright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977) (Burger, J., concurring)). Defense counsel must consult with an accused about these decisions, and obtain his consent to the course of action. *Id*.

Defense counsel also has a duty to discuss overarching defense strategies with a defendant. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). However, counsel is not required to obtain the accused's consent to "every tactical decision." *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988). Indeed,

> Once counsel is appointed, the day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate - and ultimate - responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop. Not only do these decisions rest with the attorney, but such decisions must as a practical matter, be made without consulting the client. The trial process simply does not permit the type of frequent and protracted

> interruptions which would be necessary if it were required that clients give knowing and intelligent approval to each of the myriad tactical decisions as a trial proceeds.

*Wainwright*, 433 U.S. at 93, (Burger, J., concurring).

Defense counsel's strategy of conceding a fact in accordance with evidence presented at trial is not ineffective if her representation does not fall below an objective standard of reasonableness. *Nixon*, 543 U.S. at 688. For example, in *Nixon*, defense counsel conceded the accused's guilt after assessing the strength of the prosecution's evidence was strong enough to convict the accused of murder beyond a reasonable doubt. 543 U.S. at 189. There, the Supreme Court found that when counsel took reasonable steps to defend the accused, counsel's admission of the accused's guilt did not amount to deficient performance. *Id*. at 188.

Here, the government's case, while strong, relied largely on circumstantial evidence. Nobody witnessed the murder. The evidence did not tie appellant to the crime scene at the exact moment when PVT TL died. Appellant made no admissions or statements implicating himself in the crime. In short, while the government's evidence was strong, it could not rule out many possible explanations of what happened to PVT TL.

Far from conceding appellant was in PVT TL's room, defense counsel's argument simply pointed out another, plausible, explanation of the evidence that did not involve appellant committing murder. Her closing argument, when read in its entirety, was an exercise in identifying the many holes in the government's case in an attempt to create reasonable doubt in the minds of the members. We do not need to determine defense counsel's actual strategic purpose in making these arguments; we focus on counsel's conduct objectively, rather than by submitting the conduct to a subjective after-the-fact evaluation. *See Harrington v. Richter*, 562 U.S. 86, 109-10 (2011) ("After an adverse verdict at trial, even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better. . . . *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.").

Further, the strong presumption that counsel's performance was reasonable is reflected in the assumption that "counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *See Harrington*, 562 U.S. at 109 (citing *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)). Viewing the case as a whole, we find defense counsel's tactical decisions during closing argument—and during the rest of trial—to be objectively reasonable. We therefore find appellant has failed in the first instance to demonstrate that his counsel's performance was deficient under *Strickland*.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court