NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0380n.06

Case No. 21-4136

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Aug 16, 2023

DEBORAH S. HUNT, Clerk

DELANTE L. LUNN,

    Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

    Respondent - Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, GIBBONS, and READLER, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Delante Lunn sold Shanee Dowler a mixture of heroin and fentanyl. Dowler used the drug mixture and was discovered dead the next day. A jury convicted Lunn on two counts related to the drug sale, including an enhanced penalty provision that applied because the jury determined that the drugs that Lunn sold to Dowler resulted in her death. Lunn now seeks relief under 28 U.S.C. § 2255, arguing that his trial counsel provided ineffective assistance when he did not call an expert witness to opine on Dowler's cause of death. Because Lunn fails to show deficient performance or prejudice, we affirm the district court's denial of his motion.

I.

In January 2016, Shanee Dowler moved into Roma Black's home, where Black resided with her roommate, Thomas Ellick, and her adult daughter and son. Dowler was in recovery from a heroin addiction at the time, and Black considered Dowler like a daughter. Initially, Dowler appeared to be doing well in her recovery, attending outpatient drug treatment and support group

meetings. But in mid-February, Black learned that Dowler had been drinking and taking Xanax, so Black warned Dowler that she could not continue to use substances while living in her home. Dowler agreed not to do so anymore.

On the night of February 17, however, Dowler told Black that she was going to meet a friend named Gus for drinks. Gus was a name that Delante Lunn sometimes used. When Black saw Dowler the next morning, Black noticed that Dowler was "extremely out of it." DE 82, Trial Tr., Page ID 481–82. Dowler admitted to drinking and taking Xanax, and Black again told Dowler that she could not do so if she wanted to live at Black's house. Dowler apologized and assured Black that it would not happen again.

That same morning, Dowler's stepsister, Brianna Robertson, called Dowler. During that call, Dowler asked for a ride later in the day. Dowler also told Robertson that she had met up with Lunn at a bar the previous night. Dowler admitted to Robertson that she had spent the previous night at Lunn's house and that "he got her high." DE 83, Trial Tr., Page ID 759.

When Robertson picked up Dowler that night, Dowler asked Robertson to drive to Lunn's house. During the drive, Dowler asked Robertson to send Lunn a message asking for the "same thing" that he had given her the night before. *Id.* at 770–71. Dowler also snorted a Xanax in the car. When the two women arrived at Lunn's house, Lunn was sitting outside in his car. Dowler got into the passenger seat of Lunn's car. After three or four minutes, Dowler returned to Robertson's car, holding a plastic bag containing "a gray powdery looking substance" that Robertson believed to be heroin. *Id.* at 771–72. Robertson then drove Dowler back to Black's house.

Around midnight that night, Black's children noticed that Dowler was acting strangely and asked if she was okay, and Dowler admitted that she had taken Xanax. Dowler went to bed around

2:00 a.m. She briefly woke up around 9:00 a.m. the next morning but soon returned to bed. Then, around noon that day, Black discovered Dowler lying on her bed, unresponsive. Black called 911, but Dowler was already dead.

In a search of Dowler's bedroom, police found a piece of plastic bag that contained a heroin-fentanyl mixture on a nightstand next to Dowler's body. Police also found two Xanax pills and heroin in the nightstand's top drawer and a partially eaten candy bar next to her body. A blood sample taken from Dowler's body at approximately 2:30 p.m. that day tested positive for fentanyl, morphine (a breakdown component of heroin), and Xanax. The medical examiner's office did not perform an autopsy but determined that Dowler died from a mixed drug overdose.

A federal grand jury later indicted Lunn on five counts related to drug distribution. Three of the counts related to Lunn's drug sale to Dowler and two to a separate drug sale. Lunn pled guilty to the two unrelated counts, the government dismissed one Dowler-related count, and Lunn proceeded to trial on the remaining two counts. *See United States v. Lunn*, 786 F. App'x 545, 549 (6th Cir. 2019).

One of the counts that went to trial carried an enhanced penalty provision that required the government to prove beyond a reasonable doubt that the drugs that Lunn gave Dowler "resulted in" her death. *See id.* at 547 (citing 21 U.S.C. § 841(b)(1)(C)). The government called Kevin Shanks, a forensic toxicologist who worked at the lab that tested Dowler's blood and who created the toxicology report after Dowler's death, and Dr. Frank Miller, the Chief Deputy Coroner of Lorain County, Ohio, a board-certified forensic pathologist. Shanks testified about the drugs detected in Dowler's blood and the potential significance of those levels, and Miller testified that Dowler died of a mixed-drug overdose.

On cross-examination, defense counsel attempted to discredit this testimony in three ways. First, counsel questioned the use of therapeutic ranges in determining cause of death. Second, counsel suggested that the amount of fentanyl detected in Dowler's blood, which was only slightly above the therapeutic range, had been artificially elevated by a phenomenon known as post-mortem distribution, which causes blood levels of drugs to rise after death. Third, counsel asserted that there could have been other, non-drug-related, causes of Dowler's death. In addition to these efforts, defense counsel questioned the government's witnesses about why no autopsy had been performed and whether Dowler's previous drug use could have impacted the drug levels necessary to cause her death.

During the defense case, counsel offered an expert witness, Dr. Robert Belloto, who holds a master's degree in pharmaceutical chemistry and a Ph.D. in pharmacokinetics, to continue to chip away at the prosecution's case. Belloto testified that the level of fentanyl in Dowler's blood was not necessarily toxic, comparing it to therapeutic doses used in medical settings. Belloto also confirmed the effects of post-mortem distribution, noting that therapeutic ranges should not be used to determine whether post-mortem fentanyl levels are lethal because, among other reasons, those blood levels are often falsely elevated. Finally, Belloto implied that there could have been other causes of Dowler's death, including sudden cardiac death, high blood pressure, pneumonia, or choking. Belloto did not, however, testify as to Dowler's actual cause of death because the trial court had found in the final pre-trial hearing that Belloto was not qualified to opine on that topic.

During closing arguments, defense counsel reiterated the themes developed during the presentation of evidence. Specifically, counsel highlighted the testimony about post-mortem distribution, possible alternate causes of death, and the lack of an autopsy. In sum, counsel argued

that the prosecution had not proven beyond a reasonable doubt that Dowler died from a mixed-drug overdose or that Dowler died from the drugs that Lunn sold to her.

The jury ultimately convicted Lunn of both counts, finding, as relevant here, that the drugs that Lunn sold Dowler resulted in her death. Applying the resulting enhanced penalty provision, the district court sentenced Lunn to 300 months' imprisonment and three years of supervised release.

On direct appeal, Lunn brought several challenges to his conviction and sentence, including a claim of ineffective assistance of trial counsel. We affirmed Lunn's conviction and sentence but did not resolve Lunn's ineffective assistance of counsel claim, instead telling Lunn that the argument should be raised in a motion under 28 U.S.C. § 2255. Accordingly, Lunn filed a § 2255 motion, raising his claim that his trial counsel provided constitutionally ineffective assistance when he did not retain a forensic pathologist to testify directly about Dowler's likely cause of death. The district court denied Lunn's motion.

Lunn now appeals. We review the legal issues in a district court's denial of a § 2255 motion de novo and its factual findings for clear error. *Gabrion v. United States*, 43 F.4th 569, 577–78 (6th Cir. 2022). A district court's finding that a defendant's trial counsel was not constitutionally ineffective is a mixed question of law and fact that is reviewed de novo. *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020).

II.

The Sixth Amendment guarantees a criminal defendant not only the right to counsel, but to the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); U.S. Const. amend. VI. Lunn argues that his trial counsel did not provide effective assistance because he did not retain an expert witness to testify directly about Dowler's cause of death. According to

Lunn, this failure meant that the jury heard from only the prosecution's witnesses on the cause of death and that the key factual point of his enhanced penalty conviction went uncontested. In support of his motion, Lunn offers declarations from two forensic pathologists who assert that the failure to perform an autopsy on Dowler violated professional norms and renders any conclusion about her cause of death unsupported.

To succeed on his ineffective assistance claim, Lunn needs to show both that counsel performed deficiently and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687.

III.

To establish deficient performance, Lunn must show that his counsel's performance "fell below an objective standard of reasonableness," based on prevailing professional norms. *Id.* at 688. We review a counsel's performance deferentially, applying a "strong presumption" that counsel's performance was within the "wide range" of reasonable professional representation. *Id.* at 689. Thus, it is not enough if counsel merely "deviated from best practices"; counsel's performance must rise to the level of "incompetence." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In doing so, we assess counsel's performance viewed at the time of the conduct and not with the benefit of hindsight. *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Here, Lunn challenges his counsel's failure to take a particular action, so we apply "a strong presumption" that the omission was "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam) (citing *Strickland*, 466 U.S. at 690). This presumption of reasonableness extends to "strategic decisions—including whether to hire an

expert." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) (citing *Richter*, 562 U.S. at 104). In fact, counsel's decision about which experts to hire is "the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (per curiam) (quoting *Strickland*, 466 U.S. at 690) (cleaned up).

Lunn fails to show deficient performance under this deferential standard of review. Counsel's decision not to retain a forensic pathologist fell within the range of reasonable strategic choices based on his overall defense strategy. That is, although trial counsel did not retain a forensic pathologist to testify directly about Dowler's cause of death, he did contest the prosecution's theory as to Dowler's death in other ways. Moreover, calling a forensic pathologist to testify about cause of death could have jeopardized counsel's broader strategy, so it was a reasonable tactical decision not to retain such an expert.

At trial, Lunn's defense highlighted deficiencies in the prosecution's case, thereby attempting to create sufficient doubt to prevent a conviction. Specifically, trial counsel's primary theme was that authorities never confirmed Dowler's cause of death and that they instead relied on flawed metrics to declare that she died of a mixed-drug overdose. Counsel remained consistent in pursuing this strategy throughout all phases of trial.

First, counsel challenged the prosecution's theory as to Dowler's cause of death by cross-examining the prosecution's witnesses. During this cross-examination, the prosecution's expert witnesses acknowledged that Dowler's fentanyl levels did not substantially exceed the therapeutic range, that drug toxicity ranges vary from person to person, and that post-mortem distribution could have artificially elevated the drug levels in Dowler's blood. Counsel also elicited testimony conceding that authorities never checked for other possible causes of death, including whether

Dowler had underlying health conditions or whether she could have choked on a piece of candy bar. The prosecution's experts also admitted that financial concerns were the only reason that no autopsy had been conducted on Dowler.

After eliciting this damaging information on cross-examination, defense counsel presented an expert witness, Dr. Belloto, on Lunn's behalf.[1] Belloto's testimony was consistent with trial counsel's primary strategy of discrediting the declared cause of death. To this point, Belloto testified that post-mortem distribution likely falsely elevated the amount of fentanyl detected in Dowler's blood and that, in any event, the amount detected was not necessarily a lethal dose. Belloto also suggested that there were other plausible causes of death, including from choking on the candy bar or from other health conditions.

During closing arguments, Lunn's counsel used the information elicited from the government's witnesses on cross-examination and from Belloto to highlight the weaknesses in the government's case. Counsel reiterated Dowler's history of drug use, the effects of post-mortem distribution, and the possibility of other causes of death. In short, Lunn's defense claimed that the prosecution had not met its burden of proving the cause of death.

Although this strategy did not ultimately succeed, counsel's performance was not constitutionally deficient. First, counsel's choice to defend by casting doubt on the prosecution's case was a reasonable decision, particularly in the face of substantial evidence. *Richter*, 562 U.S. at 111; *see also id.* at 109 ("To support a defense argument that the prosecution has not proved its

---

[1] Lunn argues that the failure to retain a forensic pathologist left counsel "without *any* effective means of countering Dr. Miller's unequivocal conclusions that drugs supplied by Mr. Lunn did indeed cause Ms. Dowler's death." CA6 R. 16, Appellant Br., at 25–26. But defense counsel attempted to counter Miller's testimony in several ways—namely, cross-examination and Belloto's testimony. Lunn appears to argue that only a forensic pathologist's directly contradictory testimony could effectively counter Miller, but directly contradictory testimony is not required. *See Richter*, 562 U.S. at 106, 111.

case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates."). Second, trial counsel's choice to hire only Belloto and not a forensic pathologist was a tactical decision that he was entitled to make, and Lunn has "offered no testimony or other evidence from" his trial counsel undermining the presumption that counsel acted strategically in choosing an expert. *See Reeves*, 141 S. Ct. at 2411; *Hinton*, 571 U.S. at 275.

Although Lunn argues that there could be no legitimate tactical reason not to call a forensic pathologist, the potential cross-examination of such a witness could have damaged his case. In *United States v. Davis*, 970 F.3d 650, 653–56 (6th Cir. 2020), defense counsel called a forensic pathologist to testify about the victim's cause of death after an apparent mixed-drug overdose. *United States v. Davis*, No. 1:16-cr-00260, DE 105, Trial Tr., Page ID 2003–19. The forensic pathologist testified that the failure to conduct an autopsy on the victim meant that the government's witnesses had insufficient information to opine on the cause of death. On cross-examination, the government forced the forensic pathologist to admit that the most likely cause of death was a mixed-drug overdose, undermining the defense's strategy of questioning the cause of death. The jury ultimately convicted the defendant. Thus, in this similar situation, Lunn's counsel could have reasonably decided against calling a witness who may have been forced to admit that Dowler most likely died of a mixed-drug overdose.

Lunn compares his case to *Thomas v. Clements*, in which the Seventh Circuit granted habeas relief to a defendant whose counsel failed to consider or consult with an expert to testify on the central issue in the trial. 789 F.3d 760, 768–71 (7th Cir. 2015). But this comparison fails. First, *Thomas* is an out-of-circuit case and is therefore non-binding. Second, *Thomas* contains key factual differences from Lunn's case. In *Thomas*, defense counsel presented no evidence to contest "the state's strongest evidence . . . despite its perceivable flaws." *Id.* at 769. In fact, the Seventh

Circuit described counsel's cross-examination of the state's expert as simply "ask[ing] the state's expert whether she disagreed with her own diagnosis." *Id.* at 770. In contrast, Lunn's counsel's cross-examination of the prosecution's witnesses exposed weaknesses in their testimony and elicited helpful evidence for the defense's theme that there was insufficient evidence to determine Dowler's cause of death. Counsel also presented an expert witness, Belloto, to discredit the prosecution's theory. These efforts substantially exceed those of Thomas's counsel.

Perhaps more importantly, Thomas's defense counsel admitted during post-conviction proceedings that he did not hire an expert, not for strategic reasons, but because he did not think to do so. *Id.* at 765, 769. This is not a small matter. As the Seventh Circuit explained:

> It is undisputed that counsel did not reach out to or even consider talking to a pathology expert to review [the prosecution expert's] conclusion. In many cases, we would chalk such a decision up as strategic or tactical. But we cannot reach such a conclusion because counsel admitted his failure to reach out to an expert was not a conscious decision—he just did not think to do so.

*Id.* at 768 (internal citations omitted). Thus, because defense counsel admitted his failure to even consider hiring an expert, no deference applied to counsel's actions. *Id.* at 769 ("we give no deference to counsel's uncalculated actions."). No such evidence, however, exists in the record in Lunn's case. Lunn has not introduced any testimony from his trial counsel. And in any event, Lunn's counsel did hire an expert and used that expert, in part, to undercut the government's cause-of-death evidence. Thus, unlike the counsel in *Thomas*, Lunn's counsel made a reasonable tactical choice to use one expert and not another. And deference applies to this type of strategic decision.

Because Lunn has not overcome the presumption that counsel made reasonable tactical choices, he has not established deficient performance.

IV.

Even if Lunn could establish that his trial counsel performed deficiently, he fails to show prejudice. To show prejudice, Lunn must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That is, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Lunn does not meet this standard. First, most of the information that Lunn asserts that a forensic pathologist could have provided was admitted through other testimony. For example, Lunn argues that a forensic pathologist would have testified that it was not possible to determine Dowler's cause of death without an autopsy. But several prosecution witnesses acknowledged that no autopsy was done and that there were other conceivable causes of Dowler's death that were not investigated. Lunn also suggests that a forensic pathologist could have testified about the relatively low levels of fentanyl detected in Dowler's blood, but witnesses did testify that the amount detected did not necessarily equate to a lethal dose and that there were other potential causes of death. Lunn further contends that a forensic pathologist could have testified that Dowler's cause of death could not be determined by blood tests alone given the unreliability of those tests, but the jury heard that blood levels of fentanyl can be misleading and often increase after death due to post-mortem distribution. Thus, a forensic pathologist would have provided largely duplicative evidence, and counsel's choice not to retain this type of expert did not render Lunn's trial unfair.

Although Lunn believes that a forensic pathologist would have strengthened his case, that is not the test that we apply when considering whether counsel's performance prejudiced Lunn. Instead, we consider whether counsel's decision not to call a forensic pathologist "undermine[s]

confidence in the outcome" in Lunn's trial, *Strickland*, 466 U.S. at 694, or deprived Lunn of a fair trial, *Kyles*, 514 U.S. at 434. It did not.

V.

For these reasons, we affirm.