FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 26, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA WOFFORD,

    Defendant - Appellant.

No. 23-5131
(D.C. Nos. 4:20-CV-00426-JLK-CDL &
4:17-CR-00085-JLK-1)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **CARSON**, Circuit Judges.
_____

Joshua Wofford requests a certificate of appealability (COA) to appeal from the

district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside or correct his

sentence. We deny a COA and dismiss this matter.

**BACKGROUND**

A jury convicted Wofford of one count of carjacking, based in part on

identifications by Daniel Harris and Garrett Higgins. *See United States v. Wofford*,

766 F. App'x 576, 577-79 (10th Cir. 2019). Harris saw the carjacking and later identified

Wofford in a photo line-up, while Higgins—a Tulsa police officer—saw the carjacker

_____

* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

driving the stolen truck during a chase and identified Wofford as the carjacker in a show-up after police seized him. At trial, the parties heavily litigated the admissibility and reliability of witness identifications. In Wofford's direct appeal, he (1) challenged the photo line-up shown to Harris as unduly suggestive and Harris's identification as unreliable (attempting to undermine Higgins's credibility in the process), and (2) challenged the district court's exclusion of Wofford's expert regarding issues with witness identifications. *See id.* at 579-82. We rejected those arguments and affirmed. *See id.* at 581, 582.

Wofford brought a timely § 2255 motion asserting that his trial counsel and appellate counsel were ineffective in handling witness identification issues. The district court denied both claims. It decided the appellate-counsel claim without a hearing, holding that Wofford failed to show his appellate counsel performed deficiently or that he suffered prejudice. Later, after holding a hearing on the trial-counsel claim, the district court determined that Wofford failed to show his trial counsel performed deficiently. It denied the § 2255 motion and denied a COA.

## DISCUSSION

### I.     Legal Standards

To appeal from the district court's denial of his § 2255 motion, Wofford must obtain a COA. *See* 28 U.S.C. § 2253(c)(1)(B). A COA is appropriate when a movant makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

2

that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Because the district court ruled on the merits, Wofford "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.

"[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (internal quotation marks omitted). But "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To establish that counsel was ineffective, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To satisfy the performance prong, Wofford "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[A] court deciding an actual

3

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

To satisfy the prejudice prong,[1] Wofford "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In assessing prejudice, the court "must consider the totality of the evidence before the judge or jury." *Id.* "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## II.    Application

Wofford does not challenge the district court's rejection of his appellate-counsel claim. He thus has waived any challenge to that decision, *see United States v. Murphy*, 100 F.4th 1184, 1212 n.21 (10th Cir. 2024), and we need not consider it.

Wofford does challenge the rejection of his trial-counsel claim. He first argues that reasonable jurists would debate the district court's conclusion that counsel did not perform deficiently, asserting:

> Wofford's trial counsel performed deficiently by failing: (i) to fully identify and litigate important challenges to the reliability of both Harris's and Officer Higgins's in-court identifications; (ii) to object to Higgins's

---

[1] Although the district court focused on the performance prong for the trial-counsel claim, we may deny a COA on an alternate ground that is adequately supported by the record. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005).

testimony at trial; and (iii) to undertake the investigation into the law and science underlying witness identification, memory, and cognition that was necessary to ensure, at a minimum, that the trial court would allow Wofford to present appropriate expert testimony on the fallibility of eyewitness identifications at trial.

Aplt. Opening Br./Appl. for COA at 21-22.  He further argues, briefly, that these deficiencies prejudiced his defense.

Wofford first highlights counsel's alleged failures with regard to challenging the reliability of Harris's in-court identification.  In his direct appeal, however, we held that "even assuming the photo lineup was unduly suggestive and Harris's identification was unreliable, any error in admitting Harris's identification evidence was harmless beyond a reasonable doubt."  *Wofford*, 766 F. App'x at 579.  We pointed to Higgins's identification of Wofford and to "strong circumstantial evidence that Wofford committed the carjacking," including that police apprehended him near the carjacked vehicle and that the clothing in surveillance video "align[ed] with the clothing either worn by Wofford at the time of his arrest or found nearby."  *Id.* at 580.  In light of this discussion, no reasonable jurist would debate whether Wofford suffered prejudice from a failure to further challenge Harris's in-court identification.

Of course, Wofford also challenges some of that other evidence, arguing that counsel was ineffective with regard to challenging the reliability of Higgins's in-court identification and in failing to object to Higgins's testimony at trial.  But even if reasonable jurists would debate counsel's performance regarding Higgins's testimony, as part of its analysis, the district court also concluded that a motion to suppress Higgins's testimony would have been unsuccessful, holding that "[e]ven if the show-up

identification process was unnecessarily suggestive, evaluation of the applicable factors confirms that Officer Higgins's identification was sufficiently reliable." R. Vol. VI at 144. In light of our decision on direct appeal, no reasonable jurist would debate this finding. *See Wofford*, 766 F. App'x at 580 (holding "the circumstances of Higgins's identification aren't so unlikely as to be unbelievable"). Accepting that Higgins's testimony would have been allowed, reasonable jurists would not debate the prejudice prong with regard to counsel's actions or omissions regarding that testimony.

Finally, Wofford argues that trial counsel was deficient in failing to take steps necessary to ensure he was able to present expert testimony. He asserts that had counsel litigated the issue differently, "the district court likely would have realized that such testimony was imperative to ensure that Wofford could present a complete defense and effectively rebut the eyewitness testimony against him." Aplt. Opening Br./Appl. for COA at 33. But we have previously recognized that in many circumstances, "expert psychological testimony is unlikely to assist the jury—skillful cross-examination provides an equally, if not more, effective tool for testing the reliability of an eyewitness at trial." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006). In the direct appeal, we found no abuse of discretion in the district court's conclusion that the expert's proposed testimony was not relevant, in part because defense counsel's cross-examination highlighted relevant issues. *See Wofford*, 766 F. App'x at 582. Further, some of the subjects of Wofford's proposed expert testimony were deficiencies in Harris's identification. As just discussed, however, in the direct appeal we assumed "the photo lineup was unduly suggestive and Harris's identification was unreliable," *id.* at

6

579, yet we upheld the conviction. In these circumstances, reasonable jurists would not debate whether Wofford established prejudice from his counsel's conduct with regard to expert testimony.

## CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court

Nancy L. Moritz
Circuit Judge